Eugene G. Iredale SBN: 75292
JULIA YOO,  SBN: 231163
IREDALE & YOO, APC
105 West F Street, 4th Floor
San Diego, CA 92101-6036
Tel: (619) 233-1525
Fax: (619) 233-3221
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| M.G., F.M., L.A., J.M., L.G., F.B., M.N., and R.G., individuals, | ) ) ) | Case No.: __'12 CV 0460 DMS MDD__ |
|---|---|---|
| Plaintiffs, | ) ) ) | **COMPLAINT FOR:** |
| v. | ) ) ) | **(1)** **VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2002 (1)** |
| METROPOLITAN INTERPRETERS and TRANSLATORS, INC., a corporation, JOSEPH CITRANO, an individual, LEE LAIMBEER, an individual, RON PEREZ, an individual, MONICA LEU, an individual, BLANCA ARMENTA, an individual, and DOES 1-20, inclusive, | ) ) ) ) ) ) ) ) ) | **(2)** **VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2002 (2)** |
| | ) ) ) | **(3)** **VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2002 (3)** |
| Defendants. | ) ) ) ) | **(4)** **VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2006 (d)** |
| | ) ) ) | **(5)** **VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2007 (a)** |
| | ) ) ) | **(6)** **VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2007 (b)** |
| | ) ) ) | **(7)** **FRAUD** |
| | ) ) | **(8)** **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| | ) ) ) | **(9)** **NEGLIGENCE** |
| | ) ) | **(10)** **PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
| _____ | ) | JURY TRIAL IS HEREBY DEMANDED |

COME NOW, Plaintiffs M.G., F.M., L.A., J.M., L.G., F.B., M.N., and R.G., by and through their attorneys of record, and allege and complain as follows:

**I.**
**INTRODUCTION**

Plaintiffs worked as linguists for Metropolitan Interpreters and Translators, Inc. ("Metropolitan"), a private corporation that contracted with various governmental agencies nationwide. Metropolitan had a contract with the Drug Enforcement Administration and Immigration and Customs Enforcement in San Diego. Plaintiffs, as employees of Metropolitan, provided translation services for DEA and ICE in San Diego County. In 2011, Metropolitan requested, required and demanded that all linguists working in their San Diego and Imperial County offices take polygraph exams administered by Drug Enforcement Administration personnel. Defendant Blanca Armenta, the Metropolitan site supervisor in San Diego, requested, required and demanded Plaintiffs take the DEA administered polygraph exams as a condition of employment. If the employees "failed" or refused the test, they would lose their "clearance" to be in the DEA and ICE offices, meaning that they would be terminated from their jobs.

Metropolitan was not conducting an investigation involving economic loss to Metropolitan. Nor did Metropolitan have any individualized suspicion that any of the Plaintiffs had committed a crime or had engaged in wrongdoing. Rather, Metropolitan imposed the blanket requirement that every linguist in San Diego and Imperial County take polygraphs. Metropolitan provided no written material to Plaintiffs which explained the purpose of these mandatory tests nor the basis for any investigation or suspicion; nor did Metropolitan give written notice of the employees' rights under federal and state law.

The polygraph testing in this case was prohibited by the Employee Polygraph Protection Act of 1988, 29 U.S.C. §§ 2001, *et seq*. Metropolitan effectively terminated Plaintiffs from their employment either for "failing" the polygraph test, having an inconclusive test result, or refusing to submit to the examination.

Because Plaintiffs translated wiretaps involving criminal investigations, they were not allowed to discuss their work with outsiders. Plaintiffs therefore bring this suit under their

initials.

## II.
## GENERAL ALLEGATIONS

1.     Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§ 2001 *et seq*.

2.     This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a).

3.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. §1391(b), because at all times relevant hereto, a substantial part of the events or omissions giving rise to the subject of the action occurred in San Diego County.

## III.
## PARTIES

4.     At all times relevant to this complaint, Plaintiffs were individuals residing in San Diego County, California.

5.     At all times relevant to this complaint, Defendant METROPOLITAN INTERPRETERS and TRANSLATORS, INC. (hereinafter "METROPOLITAN") was a nationwide corporation operating throughout the United States, including San Diego County, California and employing the individual Defendants  who were acting within the course and scope of their employment.

6.     Defendant JOSEPH CITRANO was the Vice President of Defendant METROPOLITAN.

7.     Defendant LEE LAIMBEER  was an employee of Defendant METROPOLITAN and the head of Human Resources and Security.

8.     Defendant RON PEREZ  was an employee of Defendant METROPOLITAN and a supervisor.

9.     Defendant MONICA LEU was an employee of Defendant  METROPOLITAN and the  supervisor of BLANCA ARMENTA.

10.     Defendant BLANCA ARMENTA was an employee of Defendant

METROPOLITAN and the site supervisor in San Diego.

11.   The individual defendants participated in, promoted, approved and executed Metropolitan's corporate policy in contravention of the EPPA.

12.   Plaintiffs are truly ignorant of the true names and capacities of DOES 1 through 20, inclusive, and/or are truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities and the facts giving rise to their liability have been ascertained.

13.   These defendants were agents, servants and employees of other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants.  Each of the defendants had approved or ratified the actions of the other defendants, thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

**IV.**
**FACTS**

14.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

15.   Defendant Metropolitan describes itself as the "largest provider of translators, transcription and interpretation services to the law enforcement community, government agencies and private corporations nationwide." It has offices in New York, Miami, Los Angeles, San Diego, Washington D.C. and Scottsdale, Arizona. Its corporate headquarters are located in New York.  Defendant Metropolitan is engaged in commerce within the meaning of 18 U.S.C. § 2001.

16.   Plaintiffs were linguists working for Metropolitan who had been thoroughly screened, vetted and subjected to security clearance checks before being hired.

17.   After a thorough background investigation before hiring, Plaintiffs were given "Law Enforcement Access" which allowed to them to enter the premises of DEA offices.

18.   In 2011, Defendant Metropolitan requested, required and demanded all linguists in San Diego and Imperial County submit to polygraph tests.

19.     A private employer is prohibited from requesting, requiring or demanding a polygraph test from an employee under the Employee Polygraph Protection Act, 29 USC §§ 2001, *et seq.*

20.     While the DEA is excluded from the EPPA requirements with respect to its own employees, it is prohibited from requesting, requiring or demanding that a private contractor's employees submit to a polygraph under 29 USC §§ 2001, *et seq* unless the contractor falls under specified statutory exceptions, none of which apply in this case.

21.     Under 29 CFR § 801.10, "exclusion from the Act applies only to the Federal, State, and local government entity with respect to **its own public employees**. Except as provided in sections 7 (b) and (c) of the Act, and § 801.11 of the regulations, this exclusion does not extend to contractors or nongovernmental agents of a government entity, nor does it extend to government entities with respect to employees of a private employer with which the government entity has a contractual or other business relation-ship." (Emphasis added)

22.     The DEA's actions in performing polygraphs were clearly illegal.  Instead of declining to force its employees into submitting to illegal polygraphs, Metropolitan and defendants agreed with, participated with and aided and abetted the DEA in the violation of law described in this Complaint.  Metropolitan and the defendants engaged in a joint venture to violate the laws a described.

23.     While it was DEA polygraphers who administered the tests, it was Defendant Metropolitan which coordinated the testing; scheduled the tests; communicated with the employees regarding the tests; presented the order in which the tests would be given; and discharged the employees after they "failed" or refused the test or had inconclusive test results.

24.     Defendant JOSEPH CITRANO mandated that all of the employees' questions be directed to him, Defendant Leu, Defendant Laimbeer and Defendant Perez.  Citrano forbade any communication regarding the polygraph between the employees and DEA.

25.     Defendant JOSEPH CITRANO approved, endorsed, ratified, and enforced the taking of the polygraphs by Metropolitan employees.

26.    Defendant JOSEPH CITRANO provided false and incomplete information to employees regarding the legality of the polygraph testing, approved the polygraph testing in violation of law.

27.    Defendant LEE LAIMBEER, the head of Human Resources, approved, endorsed ratified, and enforced the polygraph testing.

28.    Defendant RONALD PEREZ, a supervisor at Metropolitan, approved, endorsed ratified, and enforced the polygraph testing.

29.    Defendant RONALD PEREZ placed the Plaintiffs on "laid-off status"  and implemented the termination of employees.

30.    Defendant MONICA LEU, the supervisor of Defendant BLANCA ARMENTA, approved, endorsed, ratified, and enforced the polygraph testing.

31.    Defendant BLANCA ARMENTA coordinated all polygraph tests, often changing the date and time of the tests without warning, and notifying some employees of the testing via text messaging on employees' cell phones during their days off.

32.    Defendant ARMENTA told a DEA supervisor that employees failed polygraph tests "for a reason."

33.    Plaintiff M.G.   On July 6, 2011 Defendant Armenta told M.G. that he had to "cover" an evening shift.  Thirty minutes after reporting, Defendant Armenta instructed M.G. that he was to undergo a polygraph examination.  No one had provided M.G. with any written materials regarding the examination.  M.G. had to submit to a four hour polygraph test as a condition of his employment.  After his examination, he was escorted from the building. Metropolitan terminated his employment.

34.    Plaintiff F.M.   On July 8, 2011, Plaintiff felt ill and took a day off from work.  On that day, Defendant Armenta told F.M. that he would need to come to work the following day Saturday, July 9, 2011 to take a polygraph examination.  On July 9, 2011, F.M. told the polygrapher that he had not eaten breakfast and did not feel well. F.M. told the polygrapher that he had back surgery several years before and could not remain in the same position for an

extended period.  Despite this, F.M. was subjected to approximately four hour polygraph test.

The polygrapher asked personal questions regarding F.M.'s past relationship and family

relationships and F.M.'s financial situation.  The polygrapher told F.M. that he had neither

passed nor failed the polygraph. He was later escorted out of the building and his badge taken

away.  He was effectively discharged from employment.

35.  <u>Plaintiff L.A.</u>  Defendant Armenta told L.A. that she was to take a polygraph test

on August 29, 2011. On August 10, 2011 however, Defendant Armenta told  L.A. that she would

have to take the exam the very next day, August 11.   No one provided L.A. with any written

documentation regarding the polygraph examination.   L.A., in response to the polygrapher's

questions, explained that she had high blood pressure for which she was taking medication.  L.A.

was told to wash her hands with warm water.  During the pre-test phase of the examination, the

polygrapher asked her if she had engaged in sexual activity with animals.  L.A.'s examination

lasted approximately five hours.  L.A. was told that she had not passed the polygraph exam.  L.A.

was terminated from her employment at Metropolitan.

36.  <u>Plaintiff J.M.</u>  J.M.'s shift supervisor gave him a letter on August 1, 2011 that he

would have to submit to a polygraph on August 22, 2011.  No one provided J.M. with any other

written documentation regarding the polygraph examination.  The examination lasted

approximately four hours and included a question regarding his sexual conduct and whether he

cheated on his partner.   After J.M. took the polygraph, he was escorted out as if he had

committed a crime.  The polygrapher told J.M. that he failed one question and asked J.M. to

submit to a retest.  J.M. agreed to a retest.  No one set up a retest and he was terminated from his

job.

37.  <u>Plaintiff L.G.</u>  Defendant Armenta told L.G. that  she was required to take a

polygraph exam that was scheduled for September 13, 2011.   On Tuesday August 30, 2011,

Defendant Armenta sent L.G. a text message on her private cell phone,  arbitrarily changing the

date to that following Friday, September 2, 2011.  L.G. submitted to a three hour polygraph

examination on September 2.  L.G. "failed" the test and took the test again the next day for

1  another three hours.  L.G. was told that she failed the polygraph.  Plaintiff L.G. worked at the

2  ICE office which did not request or require a polygraph examination.  In December of 2011, ICE

3  was advised of the results of the polygraph examinations.   Metropolitan effectively discharged

4  L.G in December of 2011.

5      38.   Plaintiff F.B.  On August 2, 2011,  Metropolitan shift supervisor gave F.B. a

6  facsimile notifying him that he was scheduled for a  polygraph on September 30, 2011.  No one

7  provided any other documents related to the polygraph.  On August 30, 2011, Defendant

8  Armenta sent F.B. a text message that read: "Fyi yur (sic) poly is rescheduled ok. Not sure when

9  yet."  On September 9, 2011, Defendant Armenta sent a text message to F. B. that read: "Yur

10  (sic) polygraph is scheduled for: 9/14 at 11:30am. Plz (sic) have yur (sic) DL avail and make a

11  copy. And eat before yur (sic) poly plz (sic)."   One minute later, Defendant Armenta sent F.B.

12  yet another text message that read: "Yur (sic) scheduled for PM shift in Carlsbad but a sup will

13  cover it. Come directly to div plz (sic)."   F. B. Submitted to the polygraph on September 14,

14  2011 that lasted approximately four hours.  He was asked personal questions including whether

15  he ever received treatment from a mental health practitioner.  The polygrapher told F.B. that he

16  "failed" the exam. Metropolitan discharged him.

17      39.   Plaintiff M.N.  Defendant Armenta told M.N. via text message that she was to

18  take a polygraph on September 15, 2011.  M.N. provided a written statement to the DEA agent

19  declining to take the polygraph.  M.N. stated in the letter that the actions of Metropolitan were in

20  direct violation of the Employee Polygraph Protection Act. She stated that she had not been

21  provided with reasonable written notice before the exam.  M.N. stated that she declined to take

22  the test because both the test and the manner of testing were in violation of the law.  Because she

23  declined to take the test, Metropolitan fired her.

24      40.   Plaintiff R.G.  In the summer of 2011, defendant Armenta told R.G. verbally that

25  he would have to submit to a polygraph examination and that a date for the examination would

26  be given at a later time.   R.G. knew that of the first eleven Metropolitan employees tested from

27  El Centro, seven had "failed" and were let go.  R.G. grew concerned as he found out that

28

employees being tested were being called liars and pressed to "tell the truth" during the polygraph examinations.  On one occasion, Defendant Armenta told R.G. to take the polygraph exam the very next morning.   R.G. told Armenta that he had an appointment and could not do it on such short notice.  On another occasion, Defendant Armenta called R.G. shortly after his night shift had begun and instructed him to go home early because Armenta scheduled his polygraph examination the following morning.   Defendant Armenta told him that he would have to go home because they did not want to pay R.G. overtime since the administration of the polygraph would exceed his 40 hours for the week.  R.G. had car pooled with a co-worker who did not have a way home and could not leave early.  Defendant Armenta told him that she would reschedule his polygraph.  R.G. informed Defendant Armenta on or about November 6, 2011 (2 or 3 days before he was scheduled to take the exam) that he was not going to take the exam.  At the time, R.G. was working at ICE, which did not request or require that Metropolitan employees take the polygraph examination.  On December 21, 2011, while working at ICE, R.G. was informed that he was required to leave the site after he finished his shift that day.  Defendant Laimbeer notified R.G. that he was to return his identification card.  R.G. contacted Defendant Armenta regarding Laimbeer's instructions and Defendant Armenta expressed regret that he would no longer be working at Metro.

41.     Defendants constantly changed the dates of the employees' polygraphs without notice, adding to the widespread anxiety that they could be terminated at any given moment.

42.     Metropolitan forbade the employees to speak to any DEA official about the polygraphs and mandated that they speak only to Defendant Armenta and other Metropolitan supervisors.

43.     Metropolitan effectively fired all employees who "failed," had inconclusive test results, or refused the test by telling them that they could no longer access the DEA and ICE buildings to perform their jobs.

44.     The DEA had no legal right to administer polygraph tests to Plaintiffs, who were employees not of the United States, but of Metropolitan.  The EPPA prohibited the DEA from

administering the polygraphs in this case.   See 29 CFR § 801.10.  Metropolitan aided and

abetted DEA in violating the statute.  Metropolitan's actions were independently in violation of

the EPPA and California state law.

45.     Under the EPPA, any waiver of rights guaranteed by 29 USCS §§ 2001 *et seq.* is

prohibited.  The rights and procedures may not be waived by contract or otherwise, unless such

waiver is part of a written settlement agreed to and signed by the parties to

the pending action or complaint under 29 USCS §§ 2001 *et seq.*

**V.**
**FIRST CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2002 (1)**

46.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same

herein.

47.     29 USCS § 2002 provides in relevant part:

> Except as provided in sections 7 and 8 [*29 USCS §§ 2006*, *2007*], it
> shall be unlawful for any employer engaged in or affecting
> commerce or in the production of goods for commerce--
>
> (1) directly or indirectly, to require, request, suggest, or cause any
> employee or prospective employee to take or submit to any lie
> detector test

48.     Plaintiffs had a firmly established right under the Employee Polygraph Protection

Act (EPPA) which prohibits employers from using any lie detector tests either for pre-

employment screening or during the course of employment.

49.     Metropolitan is not entitled to an exclusion from the coverage under the EPPA

because it is a private company.

50.      Defendants required, requested, and suggested that Plaintiffs take or submit to a

lie detector test.

51.     Defendants directly and indirectly caused Plaintiffs to submit to a lie detector test.

52.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected

to humiliation, fear, loss of income, loss of reputation, dissemination of defamatory information,

1   loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to

2   attorney fees and punitive damages.

**VI.**
**SECOND CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2002 (2)**

53.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

54.   29 USCS § 2002 (2) provides that it is unlawful for an employer "to use, accept, refer to, or inquire concerning the results of any lie detector test of any employee or prospective employee."

55.   Defendants used, accepted and inquired about the results of the lie detector tests of the Plaintiffs.

56.   As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, dissemination of defamatory information, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to attorney fees and punitive damages.

**VII.**
**THIRD CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2002 (3)**

57.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

58.   29 USCS § 2002 (3) provides in relevant part:

Except as provided in sections 7 and 8 [*29 USCS §§ 2006*, *2007*], it shall be unlawful for any employer engaged in or affecting commerce or in the production of goods for commerce--

(3) to discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against--

(A) any employee or prospective employee who refuses, declines, or fails to take or submit to any lie detector test, or
(B) any employee or prospective employee on the basis of

11

the results of any lie detector test...

59.     Defendants discharged, disciplined and discriminated against the Plaintiffs based on the results of the lie detector test or their refusal to submit to a test.

60.     Defendants threatened to discharge, discipline, or discriminate against Plaintiffs for refusal or failure to take or submit to a lie detector test.

61.     Defendants threatened to discharge, discipline, or discriminate against Plaintiffs on the basis of the results of a polygraph test.

62.     Defendants discharged Plaintiffs M.G., L.A., J.M. L.G., and F.B. and for "failing" the polygraph.

63.     Defendants discharged Plaintiff F.M. for neither passing nor "failing" the polygraph.

64.     Defendants discharged Plaintiffs  M.N and R.G. for refusing to take the polygraph test.

65.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, dissemination of defamatory information, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to attorney fees and punitive damages.

**VIII.**
**FOURTH CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2006 (d)**

66.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

67.     The EPPA provides a limited exemption to private employers for ongoing investigations.

68.     29 USCS § 2006 (d) provides in part:

(d) Limited exemption for ongoing investigations. Subject to sections 8 and 10 [*29 USCS §§ 2007 and 2009*], this Act [*29 USCS §§ 2001* et seq.] shall not prohibit an employer from requesting an employee to submit to a polygraph test if--

(1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;

(2) the employee had access to the property that is the subject of the investigation;

(3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation; and

(4) the employer executes a statement, provided to the examinee before the test, that--

(A) sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees,

(B) is signed by a person (other than a polygraph examiner) authorized to legally bind the employer,

(C) is retained by the employer for at least 3 years...

69.     Defendants did not have reasonable suspicion that a particular employee was responsible for any crime or wrongdoing being investigated; the polygraph examinations were forced upon every employee in San Diego and Imperial Counties.

70.     Defendants were not entitled to an exemption from the EPPA.

71.     Even if they were entitled to an exemption, Defendants were required under 29 USCS § 2006 to provide to the employees before the test a statement that set forth the following information: (A) the specific incident or activity being investigated and the basis for testing particular employees; (B) which was signed by a person (other than a polygraph examiner) authorized to legally bind the employer, and (C) is retained by the employer for at least 3 years.

72.     Defendants failed to provide such a notice to Plaintiffs.

73.     Defendants failed to provide any documentation to the Plaintiffs that set forth with particularity the specific incident or activity being investigated and the basis for testing particular employees.

74.     29 USCS § 2006 (d)(4)(D) requires that the employer's written statement:

(D) contains at a minimum--
      (I) an identification of the specific economic loss or injury to the business of the employer,

13

(ii) a statement indicating that the employee had access to the property that is the subject of the investigation, and
(iii) a statement describing the basis of the employer's reasonable suspicion that the employee was involved in the incident or activity under investigation.

75.     Defendants failed to provide any written material to the Plaintiffs as mandated by the EPPA, 29 USCS § 2006 (d)(4)(D).

76.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, dissemination of defamatory information, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to attorney fees and punitive damages.

## IX.
## FIFTH CAUSE OF ACTION
## VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT
## 29 USC § 2007 (a)

77.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

78.     The EPPA's limited exemption requires that the employer not take any adverse action against the employee based solely upon the results of a polygraph.

79.     USCS § 2007 (a) provides:

(a) Test as basis for adverse employment action.

(1) Under ongoing investigations exemption. Except as provided in paragraph (2), the exemption under subsection (d) of section 7 [*29 USCS § 2006(d)*] shall not apply if an employee is discharged, disciplined, denied employment or promotion, or otherwise discriminated against in any manner on the basis of the analysis of a polygraph test chart or the refusal to take a polygraph test, without additional supporting evidence. The evidence required by such subsection may serve as additional supporting evidence.

(2) Under other exemptions. In the case of an exemption described in subsection (e) or (f) of such section [*29 USCS § 2006(e) or (f)*], the exemption shall not apply if the results of an analysis of a polygraph test chart are used, or the refusal to take a polygraph test is used, as the sole basis upon which an adverse employment action described in paragraph (1) is taken against an employee or prospective employee.

14

80.    Metropolitan employees were discharged, disciplined, denied employment or promotion, or otherwise discriminated against by Defendants for refusing to take the polygraph, "failing" the examination, or receiving an "inconclusive" result from the polygraph.

81.    Plaintiffs were "laid off," which was *de facto* termination, without any additional "supporting evidence" as required by 29 U.S.C. § 2007.

82.    The "failure," the inconclusive result of the exam, or the refusal to take the polygraph were the sole basis upon which an adverse employment action was taken against some Plaintiffs.

83.    As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, dissemination of defamatory information, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to attorney fees and punitive damages.

**X.**
**SIXTH CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2007 (b)**

84.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

85.    The EPPA provides rights to any examinee of a polygraph test.

86.    USCS § 2007 (b) provides in relevant part:

> (b) Rights of examinee. The exemptions provided under subsections (d), (e), and (f) of section 7 [*29 USCS § 2006(d)*-(f)] shall not apply unless the requirements described in the following paragraphs are met:

> (1) All phases. Throughout all phases of the test--
> (A) the examinee shall be permitted to terminate the test at any time;

> (B) the examinee is not asked questions in a manner designed to degrade, or needlessly intrude on, such examinee;

> (C) the examinee is not asked any question concerning--
> (i) religious beliefs or affiliations,

15

(ii) beliefs or opinions regarding racial matters,
(iii) political beliefs or affiliations,
(iv) any matter relating to sexual behavior; and
(v) beliefs, affiliations, opinions, or lawful activities regarding unions or labor organizations; and

*****

(2) Pretest phase. During the pretest phase, the prospective examinee--

(A) is provided with reasonable written notice of the date, time, and location of the test, and of such examinee's right to obtain and consult with legal counsel or an employee representative before each phase of the test;

(B) is informed in writing of the nature and characteristics of the tests and of the instruments involved;

(C) is informed, in writing--
(i) whether the testing area contains a two-way mirror, a camera, or any other device through which the test can be
observed,
(ii) whether any other device, including any device for recording or monitoring the test, will be used, or
(iii) that the employer or the examinee may (with mutual knowledge) make a recording of the test;

(D) is read and signs a written notice informing such examinee--
(i) that the examinee cannot be required to take the test as a condition of employment,
(ii) that any statement made during the test may constitute additional supporting evidence for the purposes of an adverse employment action described in subsection (a),
(iii) of the limitations imposed under this section,
(iv) of the legal rights and remedies available to the examinee if the polygraph test is not conducted in accordance with this Act [*29 USCS §§ 2001* et seq.], and (v) of the legal rights and remedies of the employer under this Act [*29 USCS §§ 2001* et seq.] (including the rights of the employer under section 9(c)(2) [*29 USCS § 2008(c)(2)*]]);and

(E) is provided an opportunity to review all questions to be asked during the test and is informed of the right to terminate the test at any time.

(3) Actual testing phase. During the actual testing phase, the examiner does not ask such examinee any question relevant during the test that was not presented in writing for review to such examinee before the test.

(4) Post-test phase. Before any adverse employment action, the

employer shall--
(A) further interview the examinee on the basis of the results of the
test; and
(B) provide the examinee with--
(i) a written copy of any opinion or conclusion rendered as a result
of the test, and
(ii) a copy of the questions asked during the test along with the
corresponding charted responses.

87.    Defendants violated USCS § 2007 (b) not allowing Metropolitan employees
terminate the polygraph.

88.    Defendants violated USCS § 2007 (b) by asking questions in a manner designed to
degrade, or needlessly intrude on Plaintiffs and other Metropolitan employees.

89.    Defendants violated USCS § 2007 (b) asking questions relating to sexual
behavior, including whether the examinee engaged in sexual activity with animals.

90.    Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to
provide Plaintiffs with reasonable written notice of the date, time, and location of the test, and of
such examinee's right to obtain and consult with legal counsel or an employee representative
before each phase of the test.

91.    Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to
inform Plaintiffs in writing of the nature and characteristics of the tests and of the instruments
involved.

92.    Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to
inform Plaintiffs in writing whether the testing area contains a two-way mirror, a camera, or any
other device through which the test can be observed.

93.    Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to
inform Plaintiffs in writing whether any other device, including any device for recording or
monitoring the test, will be used.

94.    Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to
inform Plaintiffs in writing that the employer or the examinee may (with mutual knowledge)
make a recording of the test.

95.     Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs  and obtain the Plaintiffs' signature on a notice  that the examinee cannot be required to take the test as a condition of employment

96.     Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs  and obtain the Plaintiffs' signature on a notice that any statement made during the test may constitute additional supporting evidence for the purposes of an adverse employment action described in subsection (a).

97.     Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs of the limitations imposed under this section and obtain the Plaintiffs' signatures on such a written notice.

98.     Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs of the legal rights and remedies available to the examinee if the polygraph test is not conducted in accordance with this Act [*29 USCS §§ 2001* et seq.], and of the legal rights and remedies of the employer under this Act [*29 USCS §§ 2001* et seq.] (including the rights of the employer under section 9(c)(2) [*29 USCS § 2008(c)(2)*]).

99.     Defendants violated USCS § 2007 (b) (2) during the pretest phase by failing to provide an opportunity to Plaintiffs to review all questions to be asked during the test and   inform them of the right to terminate the test at any time.

100.    Defendants violated USCS § 2007 (b) (4) during the post-test phase by failing to further interview the examinee on the basis of the results of the test; and provide a written copy of any opinion or conclusion rendered as a result of the test, and a copy of the questions asked during the test along with the corresponding charted responses.

101.    As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, dissemination of defamatory information, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to attorney fees and punitive damages.

////

# XI.
## SEVENTH CAUSE OF ACTION
### Fraud

102.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

103.    Defendants represented to the Plaintiffs that the polygraph examinations were legitimate and could be legally required.

104.    Defendants represented to the Plaintiffs that the polygraph examinations were being required by the DEA and that the DEA was legally permitted to do so under the EPPA

105.    Defendants represented to the Plaintiffs that the EPPA did not apply to this situation.

106.    These representations were false.

107.    Defendants were aware that these representations were false.

108.    Defendants made this representations so that plaintiffs would rely on them and submit to the polygraph tests to curry favor with the DEA and preserve the company's ongoing and profitable relationship with government agencies despite the illegality of both Metropolitan's and the DEA's actions as set forth in this complaint.

109.    Plaintiffs were not aware of the falsity of these statements and relied on them in submitting to the polygraph tests.

110.    Plaintiffs had a right to rely on the representations of their employers and as a direct and proximate cause, they lost their employment and were subjected to humiliation.

# XII.
## EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

111.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

112.     By engaging in the acts alleged herein, Defendants engaged in outrageous conduct with an intent to, or a reckless disregard of the probability of causing, Plaintiffs to suffer emotional distress.

113.     As a direct, proximate and foreseeable result, Plaintiffs suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Plaintiffs.

114.     The conduct of Defendants also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 et seq. and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

## XIII.
## NINTH CAUSE OF ACTION
### Negligence

115.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

116.     Defendants, their agents, servants and employees owed a duty of reasonable care to prevent unnecessary harm to Plaintiffs.

117.     Defendants breached their duty to exercise reasonable care by *inter alia*, by demanding Plaintiffs be subjected to a polygraph test as a condition of employment or continued employment.

118.     Defendants were negligent in their failure to properly explain the basis and procedure to the employees and unilaterally and constantly rescheduling the polygraph tests without warning to the employees.

119.     Defendants were negligent in the administration of the polygraph exam in their failure to follow proper procedures; to provide proper notice to the Plaintiffs; and to provide notice of Plaintiffs' rights.

120.     Defendant Metropolitan is liable under *respondeat superior* for the negligence of its employees performed within the course of their employment.

121.     Defendants' breach of the duty of reasonable care caused damages to Plaintiffs, in an amount to be established at trial.

## XIV.
## TENTH CAUSE OF ACTION
### [INJUNCTIVE RELIEF]

122.     Plaintiffs reallege  all prior paragraphs of this complaint and incorporate  the same

herein.

123.     Plaintiffs are informed and believe  and thereon allege  that, unless enjoined, defendants will continue to engage in the unlawful and tortious acts.

124.     Plaintiffs face  the real and immediate threat of repeated and irreparable injury and continuing, present adverse effects as a result of the acts of the Defendants.

125.     Plaintiffs have effectively been terminated from their jobs at Metropolitan and have lost their security clearance.  Plaintiffs are therefore unable to obtain similar employment elsewhere.

126.     Plaintiffs have no adequate and complete remedy at law.

127.     Plaintiffs are entitled to equitable relief under 29 U.S.C. §2005.

## XVI.
## PUNITIVE DAMAGES

128.     Defendants acted in deliberate disregard of plaintiffs rights under the Employee Polygraph Protection Act.  They acted with oppression, fraud or malice within the meaning of Civil Code Section 3294 *et seq.* and punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

WHEREFORE, Plaintiffs pray  as follows:

1.     For general and special damages according to proof at the time of trial

2.     For past and future lost wages and benefits and reinstatement of Plaintiffs' employment;

3.     For restoration of seniority rights;

4.     For expungement of record of the polygraph from the Plaintiffs' personnel files;

5.     For costs of suit and interest incurred herein and attorneys' fees pursuant to 29 U.S.C. §2005;

6.     For punitive damages, and

7.     Any further injunctive or declaratory relief this court deems just and proper.

1   DATED: February 23, 2012                    Respectfully submitted,

2                                               S/ *Eugene Iredale*

3                                               _____
                                                EUGENE G. IREDALE
                                                JULIA YOO
4                                               Attorneys for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

✎JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| M.G., F.M., L.A., J.M., L.G., F.B., M.N., R.G., individuals. | Metropolitan Interpreters and Translators, Inc., a corporation, et al. |

| (b) County of Residence of First Listed Plaintiff   San Diego | County of Residence of First Listed Defendant   New York |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known)    '12CV0460 DMS MDD |
|---|---|
| Julia Yoo (SBN:231163 ), Eugene Iredale (SBN: 75292) IREDALE & YOO, APC 105 W. F St. 4 Floor, San Diego CA 92101 | |

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 USC section 2001 et seq.   28:1331 - Federal Question (JMD)

Brief description of cause:
Violation of the EPPA, Fraud, Intentional Infliction of Emotional Distress, Negligence.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/23/2012 | |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____