Eugene G. Iredale SBN: 75292
Julia Yoo  SBN: 231163
IREDALE & YOO, APC
105 West F Street, 4th Floor
San Diego, CA 92101-6036
Tel: (619) 233-1525
Fax: (619) 233-3221
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
(Hon. Dana M. Sabraw)

| | |
|---|---|
| M.G., F.M., L.A., J.M., L.G., F.B., M.N., R.G., L.S., and E.R., individuals,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN INTERPRETERS and TRANSLATORS, INC., a corporation, J.C., an individual, L.L., an individual, R.P., an individual, M.L, an individual, B.A., an individual, and DOES 1-20, inclusive,<br><br>Defendants. | Case No.:  12-cv-00460-DMS-MDD<br><br>**COMPLAINT FOR:**<br><br>**(1)  VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2002 (1)**<br>**(2)  VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2002 (2)**<br>**(3)  VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2002 (3)**<br>**(4)  VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2006 (d)**<br>**(5)  VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2007 (a)**<br>**(6)  CIVIL CONSPIRACY**<br>**(7)  VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT 29 USC § 2007 (b)**<br>**(8)  FRAUD**<br>**(9)  NEGLIGENT MISREPRESENTATION**<br>**(10)  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**(11)  NEGLIGENCE**<br>**(12)  PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**<br><br>JURY TRIAL IS HEREBY DEMANDED |

1    COME NOW, Plaintiffs M.G., F.M., L.A., J.M., L.G., F.B., M.N., R.G., L.S., and E.R.

2    and allege and complain as follows:

3

# I.
## INTRODUCTION

4

5    Plaintiffs worked as linguists for Metropolitan Interpreters and Translators, Inc.

6    ("Metropolitan"), a private corporation that contracted with various governmental agencies

7    nationwide.  Metropolitan had a contract with the Drug Enforcement Administration and

8    Immigration and Customs Enforcement in San Diego.  Plaintiffs, as employees of Metropolitan,

9    provided translation services for DEA and ICE in San Diego County.  In 2011, Metropolitan

10   requested, required and demanded that all linguists working in their San Diego and Imperial

11   County offices take polygraph exams administered by Drug Enforcement Administration

12   personnel.  Defendant B.A., the Metropolitan site supervisor in San Diego, requested, required

13   and demanded that Plaintiffs take the DEA administered polygraph exams as a condition of

14   employment.  If the employees "failed" or refused the test, they would lose their "clearance" to

15   be in the DEA offices, meaning that they would be terminated from their jobs.

16   Metropolitan was not conducting an investigation involving economic loss to

17   Metropolitan.  Nor did Metropolitan have any individualized suspicion that any of the Plaintiffs

18   had committed a crime or engaged in wrongdoing.  Rather, Metropolitan imposed the blanket

19   requirement that every linguist in San Diego and Imperial County take polygraphs.  Metropolitan

20   provided no written material to Plaintiffs which explained the purpose of these mandatory tests

21   nor the basis for any investigation or suspicion; nor did Metropolitan give written notice of the

22   employees' rights under federal and state law.

23   The polygraph testing in this case was prohibited by the Employee Polygraph

24   Protection Act of 1988, 29 U.S.C. §§ 2001, *et seq*.  Metropolitan effectively terminated

25   Plaintiffs  from their employment either for "failing" the polygraph test, having an inconclusive

26   test result, or refusing to submit to the examination.

27   Because Plaintiffs translated wiretaps involving criminal investigations, they were not

28   allowed to discuss their work with outsiders.  Plaintiffs therefore bring this suit under their

initials.

## II.
## GENERAL ALLEGATIONS

1.       Jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§ 2001 *et seq*.

2.       This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a).

3.        Venue is proper in the Southern District of California pursuant to 28 U.S.C. §1391(b), because at all times relevant hereto, a substantial part of the events or omissions giving rise to the subject of the action occurred in San Diego County.

## III.
## PARTIES

4.       At all times relevant to this complaint, Plaintiffs were individuals residing in San Diego County, California.

5.       At all times relevant to this complaint, Defendant METROPOLITAN INTERPRETERS and TRANSLATORS, INC. (hereinafter "METROPOLITAN") was a nationwide corporation operating throughout the United States, including San Diego County, California and employing the individual Defendants  who were acting within the course and scope of their employment.

6.       Defendant J.C. was the Vice President of Defendant  METROPOLITAN.

7.       Defendant L.L.  was an employee of Defendant METROPOLITAN and the head of Human Resources and Security.

8.       Defendant R.P.  was an employee of Defendant METROPOLITAN and a supervisor.

9.       Defendant M.L. was an employee of Defendant  METROPOLITAN and the supervisor of B.A.

10.      Defendant B.A. was an employee of Defendant  METROPOLITAN and the site supervisor in San Diego.

11.     The individual defendants participated in, promoted, approved and executed Metropolitan's corporate policy in contravention of the EPPA.

12.     Plaintiffs are truly ignorant of the true names and capacities of DOES 1 through 20, inclusive, and/or are truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities and the facts giving rise to their liability have been ascertained.

13.     These defendants were agents, servants and employees of other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants.  Each of the defendants had approved or ratified the actions of the other defendants, thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

**IV.**
**FACTS**

14.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

15.     Defendant Metropolitan describes itself as the "largest provider of translators, transcription and interpretation services to the law enforcement community, government agencies and private corporations nationwide." It has offices in New York, Miami, Los Angeles, San Diego, Washington D.C. and Scottsdale, Arizona. Its corporate headquarters are located in New York.  Defendant Metropolitan is engaged in commerce within the meaning of 18 U.S.C. § 2001.

16.     Plaintiffs were linguists working for Metropolitan who had been thoroughly screened, vetted and subjected to security clearance checks before being hired.

17.     After a thorough background investigation before hiring, Plaintiffs were given "Law Enforcement Access" which allowed to them to enter the premises of DEA offices.

18.     In 2011, Defendant Metropolitan requested, required and demanded all linguists in San Diego and Imperial County submit to polygraph tests.

19.     A private employer is prohibited from requesting, requiring or demanding a

4

polygraph test from an employee under the Employee Polygraph Protection Act, 29 USC §§ 2001, *et seq.*

20.     While the Federal government is exempt from the EPPA with respect to government employees, it is subject to the EPPA requirements with respect to the employees of its private contractors.

21.     29 CFR 801.10(d) explicitly provides that : "This exclusion from the Act applies only to the federal, state and local government entity with respect to its own public employees. Except as provided in sections 7(b) and (c) of the Act, and § 801.11 of the regulations, this exclusion does not extend to contractors or non-governmental agents of a government entity, nor does it extend to government entities with respect to employees of a private employer with which the government entity has a contractual or other business relationship."

22.     Exclusions from the Act apply only to Department of Defense contractors; Department of Energy contractors with respect to the "atomic energy defense activities" of the DOE; the National Security Agency; the Central Intelligence Agency; and contractors of the FBI engaged in performance of work related to counter intelligence (defined as activities designed to protect against espionage, sabotage, terrorist activities or assassination).

23.     There is an exclusion for contractors' employees whose duties involve access to information that has been classified at the level of top secret or designated as being within a special access program under section 4.2(a) of Executive Order 12356 (or a successor Executive Order).

24.     Plaintiffs did not fall within any exclusion to the EPPA. Plaintiffs' duties did not involve access to information which was classified as "top secret."

25.     Plaintiffs' duties as translators involved access only to non-classified information which is defined as "Law Enforcement Sensitive."

26.     While such information may properly be restricted and its unauthorized dissemination proscribed, "Law Enforcement Sensitive" information is not classified information.

27.     Plaintiffs' duties did not involve access to information which was designated as being within a "special access program under §4.2(a) of Executive Order 12356". Such a special access program involves limitation of access to national defense information, intelligence activities, or other "particularly sensitive information classified pursuant to Executive Order 12356 ."

28.     Wiretap transcripts are not classified information. Were they classified, any criminal case involving wiretaps would require declassification of the intercepted conversations under cumbersome administrative procedures before disclosure to the defendant, counsel, or to the court.

29.     Metropolitan could properly vet, investigate and screen Metropolitan employees who were to be involved in translation of Title III intercepts. Metropolitan and its client, the DEA, could legally enforce requirements of confidentiality and limitation of access to Title III intercepts.

30.     These intercepts, however, were not, under the EPPA, within the limited and highly restricted category which exempted Metropolitan or the DEA from the legal requirements of the EPPA.

31.     While Metropolitan and DEA could legally use any reasonable investigative or security procedure to screen employees or insure the secrecy of Title III intercepts, the EPPA legally forbids the use of the polygraph in those efforts.

32.     While the DEA is exempted from the EPPA requirements with respect to its own employees, it is prohibited from requesting, requiring or demanding that a private contractor's employees submit to a polygraph under 29 USC §§ 2001, *et seq* unless the contractor falls under specified statutory exceptions, none of which apply in this case.

33.     The DEA's actions in performing polygraphs were clearly illegal.  Instead of declining to force its employees into submitting to illegal polygraphs, Metropolitan and defendants agreed with, participated with, and aided and abetted the DEA in the violations of law described in this complaint.  Metropolitan and the defendants engaged in a civil conspiracy to

violate the laws as described.

34.     While it was DEA polygraphers who administered the tests, it was Defendant Metropolitan which coordinated the testing; scheduled the tests for its employees; communicated with the employees regarding the tests; presented the order in which the tests would be given to the employees; and discharged the employees after they "failed" or refused the test or had inconclusive test results.

35.     When employees requested information from the DEA regarding the polygraph testing, these requests were not addressed by the DEA, but rather forwarded to the defendants.

36.     Defendant B.A. advised an ICE supervisor that Metropolitan employees "failed" the polygraph for a reason.

37.     Defendants told the employees that they were not to discuss the polygraph with any DEA employee.  Defendants said that any questions regarding the polygraph were to be addressed only with the Defendants.

38.     Defendant J.C. mandated that all of the employees' questions be directed to him, Defendant M.L., Defendant L.L .and Defendant R.P.

39.     J.C. specifically forbade any communication regarding the polygraph between the employees and DEA.

40.     When employees complained to the DEA regarding the polygraph, within a few minutes, Defendant B.A. called the office, scolding the employees for speaking to DEA agents regarding the polygraph.  B.A. threatened to write them up if she found out who had discussed the polygraph with the DEA.

41.     Defendant J.C. approved, endorsed, ratified, and enforced the taking of the polygraphs by Metropolitan employees.

42.     Defendant J.C. provided false and incomplete information to employees regarding the legality of the polygraph testing, and approved the polygraph testing in violation of law.

43.     Defendant L.L., the head of Human Resources, approved, endorsed ratified, and enforced the polygraph testing.

44.    Defendant R.P., a supervisor at Metropolitan, approved, endorsed ratified, and enforced the polygraph testing.

45.    Defendant R.P. placed the Plaintiffs on "laid-off status"  and implemented the termination of employees.

46.    Defendant M.L., the supervisor of Defendant B.A, approved, endorsed, ratified, and enforced the polygraph testing.

47.    Defendant B.A. coordinated all polygraph tests, often changing the date and time of the tests without warning, and notifying some employees of the testing via text messaging on employees' cell phones during their days off.

48.    <u>Plaintiff M.G.</u>  On July 6, 2011 Defendant B.A .told M.G. that he had to "cover" an evening shift.  Thirty minutes after reporting, Defendant B.A. instructed M.G. that he was to undergo a polygraph examination.  No one had provided M.G. with any written materials regarding the examination.  M.G. had to submit to a four hour polygraph test as a condition of his employment.  After his examination, he was escorted from the building.  Metropolitan terminated his employment.

49.     <u>Plaintiff F.M.</u>  On July 8, 2011, Plaintiff felt ill and took a day off from work.  On that day, Defendant B.A. told F.M. that he would need to come to work the following day Saturday, July 9, 2011 to take a polygraph examination.  On July 9, 2011, F.M. told the polygrapher that he had not eaten breakfast and did not feel well. F.M. told the polygrapher that he had back surgery several years before and could not remain in the same position for an extended period.  Despite this, F.M. was subjected to approximately four hour polygraph test.  The polygrapher asked personal questions regarding F.M.'s past relationship and family relationships and F.M.'s financial situation.  The polygrapher told F.M. that he had neither passed nor failed the polygraph. He was later escorted out of the building and his badge taken away.  Metropolitan effectively discharged F.M. from employment.

50.    <u>Plaintiff L.A.</u>  Defendant B.A. told L.A. that she was to take a polygraph test on August 29, 2011. On August 10, 2011 however, Defendant B.A. told  L.A. that she would have

to take the exam the very next day, August 11.   No one provided L.A. with any written documentation regarding the polygraph examination.   L.A., in response to the polygrapher's questions, explained that she had high blood pressure for which she was taking medication.   L.A. was told to wash her hands with warm water.   During the pre-test phase of the examination, the polygrapher asked her if she had engaged in sexual activity with animals.   L.A.'s examination lasted approximately five hours.   L.A. was told that she had not passed the polygraph exam.   L.A. was terminated from her employment at Metropolitan.

51.   <u>Plaintiff J.M.</u>   J.M.'s shift supervisor gave him a letter on August 1, 2011 that he would have to submit to a polygraph on August 22, 2011.   No one provided J.M. with any other written documentation regarding the polygraph examination.   The examination lasted approximately four hours and included a question regarding his sexual conduct and whether he cheated on his partner.   After J.M. took the polygraph, he was escorted out as if he had committed a crime.   The polygrapher told J.M. that he failed one question and asked J.M. to submit to a retest.   J.M. agreed to a retest.   No one set up a retest and Metropolitan terminated him from his job.

52.   <u>Plaintiff L.G.</u>   Defendant B.A. told L.G. that  she was required to take a polygraph exam that was scheduled for September 13, 2011.   On Tuesday August 30, 2011, Defendant B.A. sent L.G. a text message on her private cell phone,  arbitrarily changing the date to that following Friday, September 2, 2011.   L.G. submitted to a three hour polygraph examination on September 2.   L.G. "failed" the test and took the test again the next day for another three hours.   L.G. was told that she failed the polygraph.   Plaintiff L.G. worked at the ICE office which did not request or require a polygraph examination.   In December of 2011,Metropolitan advised ICE of the results of the DEA polygraph examinations.   Metropolitan effectively discharged L.G in  December of 2011.

53.   <u>Plaintiff F.B.</u>   On August 2, 2011,  Metropolitan shift supervisor gave F.B. a facsimile notifying him that he was scheduled for a  polygraph on September 30, 2011.   No one provided any other documents related to the polygraph.   On August 30, 2011, Defendant B.A.

1  sent F.B. a text message that read: "Fyi yur (sic) poly is rescheduled ok. Not sure when yet." On

2  September 9, 2011, Defendant B.A. sent a text message to F. B. that read: "Yur (sic) polygraph is

3  scheduled for: 9/14 at 11:30am. Plz (sic) have yur (sic) DL avail and make a copy. And eat

4  before yur (sic) poly plz (sic)."   One minute later, Defendant B.A. sent F.B. yet another text

5  message that read: "Yur (sic) scheduled for PM shift in Carlsbad but a sup will cover it. Come

6  directly to div plz (sic)."   F. B. submitted to the polygraph on September 14, 2011 that lasted

7  approximately four hours.  He was asked personal questions including whether he ever received

8  treatment from a mental health practitioner.  The polygrapher told F.B. that he "failed" the exam.

9  Metropolitan discharged him.

10         54.    Plaintiff M.N.  Defendant B.A. told M.N. via text message that she was to take a

11  polygraph on September 15, 2011.  M.N. provided a written statement to the DEA agent

12  declining to take the polygraph.  M.N. stated in the letter that the actions of Metropolitan were in

13  direct violation of the Employee Polygraph Protection Act. She stated that she had not been

14  provided with reasonable written notice before the exam.  M.N. stated that she declined to take

15  the test because both the test and the manner of testing were in violation of the law.  Because she

16  declined to take the test, Metropolitan fired her.

17         55.    Plaintiff R.G.  In the summer of 2011, defendant B.A. told R.G. verbally that he

18  would have to submit to a polygraph examination and that a date for the examination would be

19  given at a later time.   R.G. knew that of the first eleven Metropolitan employees tested from El

20  Centro, seven had "failed" and were let go.  R.G. grew concerned as he found out that employees

21  being tested were being called liars during the polygraph examinations.  On one occasion,

22  Defendant B.A. told R.G. to take the polygraph exam the very next morning.  R.G. told

23  Defendant B.A. that he had an appointment and could not do it on such short notice.  On another

24  occasion, Defendant B.A. called R.G. shortly after his night shift had begun and instructed him to

25  go home early because B.A. scheduled his polygraph examination the following morning.

26  Defendant B.A. told him that he would have to go home because they did not want to pay R.G.

27  overtime since the administration of the polygraph would exceed his 40 hours for the week.  R.G.

28

had car pooled with a co-worker who did not have a way home and could not leave early.
Defendant B.A. told him that she would reschedule his polygraph. R.G. informed Defendant
B.A. on or about November 6, 2011 (2 or 3 days before he was scheduled to take the exam) that
he was not going to take the exam. At the time, R.G. was working at ICE, which did not request
or require that Metropolitan employees take the polygraph examination. Metropolitan notified
ICE that R.G. had taken and failed the polygraph exam. On December 21, 2011, while working
at ICE, R.G. was informed that he was required to leave the site after he finished his shift that
day. Defendant L.L. notified R.G. that he was to return his identification card. R.G. contacted
Defendant BA regarding L.L.'s instructions and Defendant B.A. expressed regret that he would
no longer be working at Metro.

56. <u>Plaintiff L.S.</u> On September 9, 2011, Defendant B.A. sent Plaintiff LS a text
message stating " yur polygraph is scheduled for: 9/15 @ 8:30am. Plz have yur DL available and
make a copy. Wear flats and eat before yur poly plz." On September 12, a supervisor told LS
that the exam would be rescheduled. On November 4, 2011, BA sent LS a text stating, " yur
scheduled for yur poly on wed @ 11:30. Go to work as scheduled and lv around 10:30, eat before
u come ok? Did I give u the letter w instructions." However, on November 8, 2011, B.A. sent
L.S. a text canceling the test. Later that day on November 8, 2011, B.A. called L.S. and told L.S.
to take the polygraph on November 22, 2011. On November 16, 2011, B.A. sent L.S. an email
stating "unfortunately I have to cancel polygraph for next week. The polygrapher had an
emergency and will not be available. I will contact you as soon as the polygrapher give me her
availability." The next day, November 17, 2011, B.A. told L.S. that she would be taking the
polygraph on November 22, 2011 after all. On November 22, 2011, B.A. sent a text to L.S.
stating, "Miss Lydia. Plz come to div tomorrow @ 9 for yur poly. Ahora si! So just come straight
here. No need to go to carlsbad." On November 23, 2011, B.A. sent a text to L.S. stating, "
Buenos dias. When u get to the office clock in under neiremeirs case plz and make a copy of yur
DL. And just wait for Eileen."

57. Plaintiff L.S. submitted to the polygraph examination. After the test, B.A. told

1   L.S. to return to work.  An hour later, B.A. called L.S. and told her to give her badge to her

2   supervisor and leave the building.

3        58.   Plaintiff E.R.: On March 12, 2012, B.A. told E.R. that his polygraph had been

4   scheduled on March 18, 2012 at 9 a.m.  B.A. requested that E.R. go to the DEA office to submit

5   to the testing.  E.R. was working for ICE, not DEA.  E.R. had not worked for the DEA for

6   months and had worked exclusively with ICE.

7        59.   Defendants constantly changed the dates of the employees' polygraphs without

8   notice, adding to the widespread anxiety that they could be terminated at any given moment.

9        60.   Metropolitan forbade the employees to speak to any DEA official about the

10  polygraphs and mandated that they speak only to Defendant B.A. and other Metropolitan

11  supervisors.

12       61.   Submission to the polygraph was part of the plaintiffs' employment by

13  Metropolitan.  The polygraphs were administered during work hours and the employees were

14  paid for their time spent undergoing the polygraph examination.

15       62.   Metropolitan effectively fired all employees who "failed," had inconclusive test

16  results, or refused the test.

17       63.   The DEA had no legal right to administer polygraph tests to Plaintiffs, who were

18  employees not of the United States, but of Metropolitan.  The EPPA prohibited the DEA from

19  administering the polygraphs in this case under *inter alia*,  29 CFR § 801.10.  Metropolitan aided

20  and abetted DEA in violating the statute.  Metropolitan's actions were independently in violation

21  of the EPPA.

22       64.   Under the EPPA, any waiver of rights guaranteed by 29 USCS §§ 2001 *et seq.* is

23  prohibited.  The rights and procedures may not be waived by contract or otherwise, unless such

24  waiver is part of a written settlement agreed to and signed by the parties to

25  a pending legal action or complaint under 29 USCS §§ 2001 *et seq.*

26  ////

27  ////

28

**V.**
**FIRST CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2002 (1)**

65.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

66.     29 USCS § 2002 provides in relevant part:
Except as provided in sections 7 and 8 [*29 USCS §§ 2006, 2007*], it shall be unlawful for any employer engaged in or affecting commerce or in the production of goods for commerce--

(1) directly or indirectly, to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test

67.     Plaintiffs had a firmly established right under the Employee Polygraph Protection Act (EPPA) which prohibits employers from using any lie detector tests either for pre-employment screening or during the course of employment.

68.     Metropolitan is not entitled to an exclusion from the coverage under the EPPA because it is a private company.

69.     Defendants required, requested, and suggested that Plaintiffs take or submit to a lie detector test.

70.     Defendants directly and indirectly caused Plaintiffs to submit to a lie detector test.

71.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to compensatory damages, attorney fees and punitive damages.

**VI.**
**SECOND CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2002 (2)**

72.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

73.     29 USCS § 2002 (2) provides that it is unlawful for an employer "to use, accept,

13

1 | refer to, or inquire concerning the results of any lie detector test of any employee or prospective

2 | employee."

3 |      74.     Defendants used, accepted and inquired about the results of the lie detector tests of

4 | the Plaintiffs.  They inquired of results of the tests from DEA.  They accepted and used them.

5 | They disseminated the results to ICE.

6 |      75.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected

7 | to humiliation, fear, loss of income, loss of reputation, dissemination of defamatory information,

8 | loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to

9 | compensatory damages, attorney fees and punitive damages.

10 |
11 |
12 |

**VII.**
**THIRD CAUSE OF ACTION**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2002 (3)**

13 |      76.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same

14 | herein.

15 |      77.     29 USCS § 2002 (3) provides in relevant part:

16 |      Except as provided in sections 7 and 8 [*29 USCS §§ 2006*, *2007*], it
17 |      shall be unlawful for any employer engaged in or affecting
     commerce or in the production of goods for commerce--

18 |      (3) to discharge, discipline, discriminate against in any manner, or
19 |      deny employment or promotion to, or threaten to take any such
     action against--

20 |      (A) any employee or prospective employee who refuses,
21 |      declines, or fails to take or submit to any lie detector test, or
     (B) any employee or prospective employee on the basis of
22 |      the results of any lie detector test...

23 |      78.     Defendants discharged, disciplined and discriminated against the Plaintiffs based

24 | on the results of the lie detector test or their refusal to submit to a test.

25 |      79.     Defendants threatened to discharge, discipline, or discriminate against Plaintiffs for

26 | refusal or failure to take or submit to a lie detector test.

27 |      80.     Defendants threatened to discharge, discipline, or discriminate against Plaintiffs

28 | on the basis of the results of a polygraph test.

81.     Defendants discharged Plaintiffs M.G., L.A., J.M., L.G., F.B. and L.S. for "failing" the polygraph.

82.     Defendants discharged Plaintiff F.M. for neither passing nor "failing" the polygraph.

83.     Defendants discharged Plaintiffs  M.N and R.G. for refusing to take the polygraph test.

84.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to compensatory damages, attorney fees and punitive damages.

<u>**VIII.**</u>
**<u>FOURTH CAUSE OF ACTION</u>**
**VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
**29 USC § 2006 (d)**

85.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

86.     The EPPA provides a limited exemption to private employers for ongoing investigations.

87.     29 USCS § 2006 (d) provides in part:

> (d) Limited exemption for ongoing investigations. Subject to sections 8 and 10 [*29 USCS §§ 2007* and *2009*], this Act [*29 USCS §§ 2001* et seq.] shall not prohibit an employer from requesting an employee to submit to a polygraph test if--

> (1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;

> (2) the employee had access to the property that is the subject of the investigation;

> (3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation; and

> (4) the employer executes a statement, provided to the examinee before the test, that--

        (A) sets forth with particularity the specific incident or activity
being investigated and the basis for testing particular employees,

        (B) is signed by a person (other than a polygraph examiner)
authorized to legally bind the employer,

        (C) is retained by the employer for at least 3 years...

88.     Defendants did not have reasonable suspicion that any plaintiff was responsible for any crime or wrongdoing being investigated; the polygraph examinations were forced upon every Metropolitan employee in San Diego and Imperial Counties.

89.     Defendants were not entitled to an exemption from the EPPA.

90.     Even if they were entitled to an exemption, Defendants were required under 29 USCS § 2006 to provide to the employees before the test a statement that set forth the following information: (A) the specific incident or activity being investigated and the basis for testing particular employees; (B) which was signed by a person (other than a polygraph examiner) authorized to legally bind the employer, and (C) is retained by the employer for at least 3 years.

91.     Defendants failed to provide such a notice to Plaintiffs.

92.     Defendants failed to provide any documentation to the Plaintiffs that set forth with particularity the specific incident or activity being investigated and the basis for testing particular employees.

93.     29 USCS § 2006 (d)(4)(D) requires that the employer's written statement:

        (D) contains at a minimum--
            (I) an identification of the specific economic loss or injury
to the business of the employer,
            (ii) a statement indicating that the employee had access to
the property that is the subject of the investigation, and
            (iii) a statement describing the basis of the employer's
reasonable suspicion that the employee was involved in the
incident or activity under investigation.

94.     Defendants failed to provide any written material to the Plaintiffs as mandated by the EPPA, 29 USCS § 2006 (d)(4)(D).

95.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, loss of employment, and pain and suffering

1   by the illegal acts of defendants and are entitled to compensatory damages, attorney fees and

2   punitive damages.

3                                              **IX.**
                                      **FIFTH CAUSE OF ACTION**
4            **VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT**
                                        **29 USC § 2007 (a)**
5

6           96.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same

7   herein.

8           97.     The EPPA's limited exemption requires that the employer not take any adverse

9   action against the employee based solely upon the results of a polygraph.

10          98.     USCS § 2007 (a) provides:

11                  (a) Test as basis for adverse employment action.

12                  (1) Under ongoing investigations exemption. Except as provided in
                    paragraph (2), the exemption under subsection (d) of section 7 [*29
13                  USCS § 2006(d)*] shall not apply if an employee is discharged,
                    disciplined, denied employment or promotion, or otherwise
14                  discriminated against in any manner on the basis of the analysis of
                    a polygraph test chart or the refusal to take a polygraph test,
15                  without additional supporting evidence. The evidence required by
                    such subsection may serve as additional supporting evidence.
16

17                  (2) Under other exemptions. In the case of an exemption described
                    in subsection (e) or (f) of such section [*29 USCS § 2006(e)* or (f)],
18                  the exemption shall not apply if the results of an analysis of a
                    polygraph test chart are used, or the refusal to take a polygraph test
19                  is used, as the sole basis upon which an adverse employment action
                    described in paragraph (1) is taken against an employee or
20                  prospective employee.

21

22          99.     Metropolitan employees were discharged, disciplined, denied employment or

23   promotion, or otherwise discriminated against by Defendants for refusing to take the polygraph,

24   "failing" the examination, or receiving an "inconclusive" result from the polygraph.

25          100.    Plaintiffs were "laid off," which was *de facto* termination, without any additional

26   "supporting evidence" as required by 29 U.S.C. § 2007.

27          101.    The "failure," the inconclusive result of the exam, or the refusal to take the

28   polygraph were the sole bases upon which an adverse employment action was taken against

                                                   17

Plaintiffs.

102.     As a direct and proximate result of Defendants' actions, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to compensatory damages, attorney fees and punitive damages.

## X.
### SIXTH CAUSE OF ACTION
### CIVIL CONSPIRACY TO VIOLATE THE EPPA

103.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

104.     Defendants entered into a conspiracy with the DEA officials and each other to violate the EPPA by jointly acting to cause the administration of polygraph examinations to Metropolitan employees, to use the results of those polygraphs, to disseminate those results, to discharge employees based on the polygraph results and to violate the EPPA.

105.     These Defendants engaged in a joint venture, a common plan or scheme, and a civil conspiracy to violate multiple provisions of the EPPA.

106.     These wrongful act or acts were done pursuant to the agreement between the Defendants, the DEA  and DEA personnel.

107.     Each Defendant, as a member of the conspiracy, acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, which was to violate the EPPA.

108.     These Defendants committed overt acts to further the conspiracy.

109.     In furtherance of their unlawful agreement, Defendants committed the following overt acts, among others:

a.     Defendant B.A. coordinated the scheduling of the polygraph examinations of Metropolitan employees by email, text, verbal requests and facsimiles.

b.     Defendant B.A. often changed the date and time of the tests without warning, notifying some employees of the testing via text messaging on employees' cell phones during their days off.

c.    Defendant B.A. told a DEA supervisor that employees failed polygraph tests "for a reason."

d.    Defendant J.C. mandated that all of the employees' questions be directed to him, Defendant M.L., Defendant L.L.and Defendant R.P.

e.    Defendant J.C. forbade any communication regarding the polygraph between the employees and DEA.

f.    Defendant J.C. provided false and incomplete information to employees regarding the legality of the polygraph testing, and approved the polygraph testing in violation of law.

g.    Defendant R.P. placed the Plaintiffs on "laid-off status"  and implemented the termination of employees.

h.    Defendant R.P. disseminated the results of the polygraph examinations to officials of ICE.

110.    These Defendants are joint tortfeasors with the DEA and DEA personnel.  They are liable for all damages ensuing from the wrongs committed by their co-conspirators, irrespective of whether or not they were direct actors and regardless of the degree of their activity.

111.    As a result of the conspiracy, Plaintiffs suffered damages in the amount to be proven at trial.

## XI.
### SEVENTH CAUSE OF ACTION
### VIOLATION OF EMPLOYEE POLYGRAPH PROTECTION ACT
### 29 USC § 2007 (b)

112.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

113.    The EPPA provides rights to any examinee of a polygraph test.

114.    USCS § 2007 (b) provides in relevant part:

(b) Rights of examinee. The exemptions provided under subsections (d), (e), and (f) of section 7 [*29 USCS § 2006(d)*-(f)] shall not apply unless the requirements described in the following paragraphs are met:

(1) All phases. Throughout all phases of the test--
(A) the examinee shall be permitted to terminate the test at any time;

(B) the examinee is not asked questions in a manner designed to degrade, or needlessly intrude on, such examinee;

(C) the examinee is not asked any question concerning--
(i) religious beliefs or affiliations,
(ii) beliefs or opinions regarding racial matters,
(iii) political beliefs or affiliations,
(iv) any matter relating to sexual behavior; and
(v) beliefs, affiliations, opinions, or lawful activities regarding unions or labor organizations; and

*****

(2) Pretest phase. During the pretest phase, the prospective examinee--

(A) is provided with reasonable written notice of the date, time, and location of the test, and of such examinee's right to obtain and consult with legal counsel or an employee representative before each phase of the test;

(B) is informed in writing of the nature and characteristics of the tests and of the instruments involved;

(C) is informed, in writing--
(i) whether the testing area contains a two-way mirror, a camera, or any other device through which the test can be observed,
(ii) whether any other device, including any device for recording or monitoring the test, will be used, or
(iii) that the employer or the examinee may (with mutual knowledge) make a recording of the test;

(D) is read and signs a written notice informing such examinee--
(i) that the examinee cannot be required to take the test as a condition of employment,
(ii) that any statement made during the test may constitute additional supporting evidence for the purposes of an adverse employment action described in subsection (a),
(iii) of the limitations imposed under this section,
(iv) of the legal rights and remedies available to the examinee if the polygraph test is not conducted in accordance with this Act [*29 USCS §§ 2001* et seq.], and (v) of the legal rights and remedies of the employer under this Act [*29 USCS §§ 2001* et seq.] (including the rights of the employer under section 9(c)(2) [*29 USCS § 2008(c)(2)*]);and

(E) is provided an opportunity to review all questions to be asked during the test and is informed of the right to terminate the test at any time.

(3) Actual testing phase. During the actual testing phase, the

examiner does not ask such examinee any question relevant during the test that was not presented in writing for review to such examinee before the test.

(4) Post-test phase. Before any adverse employment action, the employer shall--
(A) further interview the examinee on the basis of the results of the test; and
(B) provide the examinee with--
(i) a written copy of any opinion or conclusion rendered as a result of the test, and
(ii) a copy of the questions asked during the test along with the corresponding charted responses.

115.     Defendants and their DEA co-conspirators violated USCS § 2007 (b) not allowing Metropolitan employees to terminate the polygraph.

116.     Defendants and their DEA co-conspirators violated USCS § 2007 (b) by asking questions in a manner designed to degrade, or needlessly intrude on Plaintiffs and other Metropolitan employees.

117.     Defendants and their DEA co-conspirators violated USCS § 2007 (b) asking questions  relating to sexual behavior, including whether the examinee engaged in sexual activity with animals.

118.     Defendants and their DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to provide Plaintiffs  with reasonable written notice of the date, time, and location of the test, and of such examinee's right to obtain and consult with legal counsel or an employee representative before each phase of the test.

119.     Defendants and their DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs  in writing of the nature and characteristics of the tests and of the instruments involved.

120.     Defendants and their DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs  in writing whether the testing area contains a two-way mirror, a camera, or any other device through which the test can be observed.

121.     Defendants' DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest

phase by failing to inform Plaintiffs in writing whether any other device, including any device for recording or monitoring the test, will be used.

122.   Defendants' DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs in writing that the employer or the examinee may (with mutual knowledge) make a recording of the test.

123.   Defendants and their DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs and obtain the Plaintiffs' signature on a notice that the examinee cannot be required to take the test as a condition of employment

124.   Defendants and their DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs and obtain the Plaintiffs' signature on a notice that any statement made during the test may constitute additional supporting evidence for the purposes of an adverse employment action described in subsection (a).

125.   Defendants' DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs of the limitations imposed under this section and obtain the Plaintiffs' signatures on such a written notice.

126.   Defendants and their DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to inform Plaintiffs of the legal rights and remedies available to the examinee if the polygraph test is not conducted in accordance with this Act [*29 USCS §§ 2001* et seq.], and of the legal rights and remedies of the employer under this Act [*29 USCS §§ 2001* et seq.] (including the rights of the employer under section 9(c)(2) [*29 USCS § 2008(c)(2)*]).

127.   Defendants and their DEA co-conspirators violated USCS § 2007 (b) (2) during the pretest phase by failing to provide an opportunity to Plaintiffs to review all questions to be asked during the test and   inform them of the right to terminate the test at any time.

128.   Defendants' DEA co-conspirators violated USCS § 2007 (b) (4) during the post-test phase by failing to further interview the examinee on the basis of the results of the test; and provide a written copy of any opinion or conclusion rendered as a result of the test, and a copy of the questions asked during the test along with the corresponding charted responses.

129.     As a direct and proximate result of Defendants' actions and those of their co-conspirators, Plaintiffs were subjected to humiliation, fear, loss of income, loss of reputation, loss of employment, and pain and suffering by the illegal acts of defendants and are entitled to compensatory damages, attorney fees and punitive damages.

**XII.**
**EIGHTH CAUSE OF ACTION**
**FRAUD**

130.     Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

131.     Defendants made false material representations to plaintiffs in order to induce plaintiffs to submit to polygraphs when plaintiffs had no obligation to do so and the defendants were acting illegally in requesting, suggesting and requiring the plaintiffs to take a polygraph examination.

132.      Defendants A.B. and J.C. represented to the Plaintiffs that the polygraph examinations were legitimate and could be legally required.

133.     Defendants A.B. and J.C. represented to the Plaintiffs that the polygraph examinations were being required by the DEA and that the DEA was legally permitted to do so under the EPPA.

134.     Defendants represented to the Plaintiffs that the EPPA did not apply to these polygraphs.

135.     Defendant J.C. falsely represented to plaintiffs that no employees would be "terminated unless there is a criminal act involved."

136.     Defendants J.C., A.B. and R.P. told plaintiffs that if they failed the polygraph or declined to take it, they would not be discharged, but would be permitted to work on other non-DEA projects, such as work for ICE.

137.     These statements were all false and known to be false by defendants at the time they made them.  Plaintiffs reasonably  relied on the representations in taking the polygraphs.

138.     After the polygraphs were taken or refused, Defendants falsely told several

plaintiffs that they were not discharged, but were merely "laid off". Defendants claimed to plaintiffs that Metropolitan had not dismissed them from employment, and that they could continue to work on any other available assignments in San Diego, including work for ICE on Title III intercepts.

139.    After defendants had made these representations, Metropolitan supervisor R.P. disclosed to ICE a list of the Plaintiffs' names and Social Security numbers.

140.    R.P. further disclosed to ICE that plaintiffs had been subjected to polygraph examinations; that plaintiffs either did not pass, or declined to take polygraph examinations; and that plaintiffs no longer were employed on DEA projects.

141.    Thereafter, in response to Metropolitan's unlawful disclosures, ICE informed Metropolitan that it no longer wanted plaintiffs to work on ICE projects.

142.    Metropolitan then falsely represented to plaintiffs that ICE had independently terminated their access to ICE facilities. Metropolitan expressed its regrets, and continued to falsely maintain that plaintiffs were not fired, but that Metropolitan simply had no work on which plaintiffs were cleared to work.

143.    This ploy was an attempt by Metropolitan to avoid legal liability by falsely claiming that ICE had acted unilaterally, and Metropolitan was not responsible.

144.    Plaintiffs had a right to rely on the representations of the defendants and as a direct and proximate cause, they lost their employment and were subjected to humiliation and damages as set forth in this complaint.

## XIII.
## NINTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

145.    Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

146.    Defendants made representations set forth in paragraphs 131-136, 138 and 142 as to the material facts regarding the polygraph examinations.

147.    These representations were untrue.

148.   Defendants negligently made these untrue representations.

149.   The representations were made with the intent to induce plaintiffs to rely upon them.

150.   Plaintiffs were unaware of the falsity of the representation and acted in reliance upon the truth of the representation.  Plaintiffs were justified in relying on the defendants' representations.

151.   Defendant Metropolitan is liable under *respondeat superior* for the negligent misrepresentation of its employees.

152.   As a result of the reliance upon the truth of the representations, plaintiffs sustained damage in an amount to be established at trial.

## XIV.
## TENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

153.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

154.    By engaging in the acts alleged herein, Defendants engaged in outrageous conduct with an intent to, or a reckless disregard of the probability of causing, Plaintiffs to suffer emotional distress.

155.   As a direct, proximate and foreseeable result, Plaintiffs suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Plaintiffs.

156.    The conduct of Defendants also amounts to oppression, fraud or malice and was undertaken in deliberate disregard of Plaintiffs' rights.  Punitive damages should be assessed against each defendant for the purpose of punishment and for the sake of example.

## XV.
## ELEVENTH CAUSE OF ACTION
## NEGLIGENCE

157.   Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein.

158.   Defendants, their agents, servants and employees owed a duty of reasonable care to

25

1  prevent unnecessary harm to Plaintiffs.

2      159.   Defendants breached their duty to exercise reasonable care by *inter alia*, by

3  demanding Plaintiffs be subjected to a polygraph test as a condition of employment or continued

4  employment.

5      160.   Defendants were negligent in their failure to properly explain the basis and

6  procedure to the employees and unilaterally and constantly rescheduling the polygraph tests

7  without warning to the employees.

8      161.   Defendants were negligent in their failure to follow proper statutory procedures; to

9  provide proper notice to the Plaintiffs; and to provide notice of Plaintiffs' rights.

10      162.   Defendant Metropolitan is liable under *respondeat superior* for the negligence of

11  its employees performed within the course of their employment.

12      163.   Defendants' breach of the duty of reasonable care caused damages to Plaintiffs, in

13  an amount to be established at trial.

14                              **XVI.**
                    **TWELFTH CAUSE OF ACTION**
15                     **[INJUNCTIVE RELIEF]**

16      164.   Plaintiffs reallege  all prior paragraphs of this complaint and incorporate  the same

17  herein.

18      165.   Plaintiffs are informed and believe  and thereon allege  that, unless enjoined,

19  defendants will continue to engage in the unlawful and tortious acts.

20      166.   Plaintiffs face  the real and immediate threat of repeated and irreparable injury and

21  continuing, present adverse effects as a result of the acts of the Defendants.

22      167.   Plaintiffs have effectively been terminated from their jobs at Metropolitan and

23  have lost their clearance.  Plaintiffs are therefore unable to obtain similar employment elsewhere.

24      168.   Plaintiffs have no adequate and complete remedy at law.

25      169.   Plaintiffs are entitled to equitable relief under 29 U.S.C. §2005.

26      170.   Plaintiffs seek an order of the Court reinstating them to their employment,

27  requiring the destruction of all records of polygraph results in Metropolitan's possession, and

28

1    enjoin Metropolitan from dissemination of polygraph information.

2

3    ### XVII.
### NOTICE OF INTENT TO JOIN DEA AND DEA PERSONNEL AS DEFENDANTS

4    1.      Defendants conspired and acted jointly with the DEA and DEA employees to

5    violate the EPPA.

6    2.      Plaintiffs intend to join the DEA and DEA personnel as defendants in this action.

7    3.      Plaintiffs have not yet joined the DEA and DEA personnel as defendants because

8    the Federal Tort Claims Act requires that as a prerequisite for filing suit against a federal agency

9    or agents, the claimants must first present a written claim to the agency setting forth the basis of

10   the claim and the damages sought.  Before filing suit against an agency and its agents, claimants

11   must wait for the agency to deny the claim or for 6 months to pass from the date the claim was

12   filed.  Eight of the ten plaintiffs submitted their FTCA claim to the DEA on March 1, 2012.  The

13   two additional plaintiffs will submit their FTCA claim shortly.

14   4.      Plaintiffs will amend to add the DEA and DEA personnel responsible as soon as

15   they may legally do so under federal law.

16   ### XVIII.
### PUNITIVE DAMAGES

17

18   Defendants acted in deliberate disregard of plaintiffs rights under the Employee Polygraph

19   Protection Act.  They acted with oppression, fraud or malice and punitive damages should be

20   assessed against each defendant for the purpose of punishment and for the sake of example.

21

22   WHEREFORE, Plaintiffs pray  as follows:

23   1.      For general and special damages according to proof at the time of trial

24   2.      For past and future lost wages and benefits and reinstatement of Plaintiffs'

25   employment;

26   3.      For restoration of seniority rights;

27   4.      For expungement of record of the polygraph from the Plaintiffs' personnel files;

28   5.      For costs of suit and interest incurred herein and attorneys' fees pursuant to 29

27

U.S.C. §2005;

6. For punitive damages, and

7. Any further injunctive or declaratory relief this court deems just and proper.

DATED: April 5, 2012                                    Respectfully submitted,

                                                       S/ *Eugene Iredale*

                                                       _____
                                                       EUGENE G. IREDALE
                                                       JULIA YOO
                                                       Attorneys for Plaintiff