# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.G., G.M., L.A., J.M., L.G., F.B., M.N., R.G., L.S., and E.R.,<br><br>    Plaintiffs,<br><br>vs.<br><br>METROPOLITAN INTERPRETERS AND TRANSLATORS, INC., J.C., L.L., R.P., M.L., B.A., UNITED STATES OF AMERICA, EILEEN ZEIDLER, SONDRA HESTER, DAREK KITLINSKI, and WILLIAM R. SHERMAN,<br><br>    Defendants. | CASE NO. 12cv0460 JM(MDD)<br><br>ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS |

    This matter comes before the court in response to the court's March 20, 2013 request for further briefing on whether Plaintiffs may bring a private cause of action against the United States pursuant to the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. §2001 et seq. (Ct. Dkt. 60). That order also denied the sovereign immunity motion brought by Defendants United States of America, Eileen Zeidler, Sondra Hester, Darek Kitlinski, and William R. Sherman (collectively the "Federal Defendants"). Plaintiffs M.G., G.M., L.A., J.M., L.G., F.B., M.N., R.G., L.S., and E.R. (collectively "Plaintiffs") oppose the motion. Pursuant to Local Rule 7.1(d)(1), the court finds this matter appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion to dismiss the EPPA claims and grants the

motion to dismiss the individual Federal Defendants from this action.

## BACKGROUND

On October 10, 2012, Plaintiffs filed the operative Second Amended Complaint ("SAC") alleging nine causes of action: (1) violation of EPPA, 29 U.S.C. §2002(1); (2) violation of EPPA, 29 U.S.C. §2002(2); (3) violation of EPPA, 29 U.S.C. §2002(3); (4) civil conspiracy; (5) fraud; (6) negligent misrepresentation; (7) intentional infliction of emotional distress; (8) negligence; and (9) permanent injunction and other equitable relief. Plaintiffs allege jurisdiction based upon federal question jurisdiction, 28 U.S.C. §1331 and 29 U.S.C. §2001 et seq., and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a). (SAC ¶¶1, 2). Defendants Eileen Zeidler, Sondra Hester, Darek Kitlinski, and William R. Sherman are employees of the Drug Enforcement Agency ("DEA").

Plaintiffs' claims relate to their employment as linguists with Metropolitan Interpreters and Translators, Inc. ("Metropolitan"). Defendants J.C., L.L., R.P., M.L., and B.A. are employees of Metropolitan. (SAC ¶¶7-11). Metropolitan provides translation, transcription and interpretation services to the law enforcement community, government agencies, and private corporations. (SAC ¶18). Plaintiffs provide the following summary of their case:

> In 2011, Metropolitan and DEA requested, required and demanded that all linguists working in their San Diego and Imperial County offices take polygraph exams. Defendant B.A., the Metropolitan site supervisor in San Diego, made all arrangements for Plaintiffs take the DEA administered polygraph exams as a condition of employment. If the employees "failed" or refused the test, or had inconclusive results, they would lose their "clearance" to be in the DEA offices, meaning that they would be terminated from their jobs.
>
> Metropolitan was not conducting an investigation involving economic loss to Metropolitan. Nor did Metropolitan have any individualized suspicion that any of the Plaintiffs had committed a crime or engaged in wrongdoing. Rather, Defendants imposed the blanket requirement that every linguist in San Diego and Imperial County take polygraphs. Defendants provided no written material to Plaintiffs which explained the purpose of these mandatory tests nor the basis for any investigation or suspicion; nor did Defendants give written notice of the employees' rights under federal and state law.
>
> One of the polygraphists, Defendant Eileen Zeidler, asked grossly

      inappropriate and personal questions to some of the Plaintiffs. These questions were demeaning and humiliating. DEA agents pressured Plaintiffs into "telling the truth" or accused Plaintiffs of lying. Agents escorted Plaintiffs out of the building in a humiliating fashion after they "failed" the polygraph.

      The polygraph testing in this case was prohibited by the Employee Polygraph Protection Act of 1988, 29 U.S.C. §§ 2001, et seq. ("EPPA") Defendants effectively terminated Plaintiffs from their employment either for "failing" the polygraph test, having an inconclusive test result, or refusing to submit to the examination.

(SAC at pp. 2:8-3:2).

According to Plaintiffs, in 2011, they were informed by Metropolitan that they would be discharged if they failed the polygraph exam, refused the exam, or provided inconclusive test results. (SAC ¶38). The DEA not only allegedly requested and demanded the polygraph tests, but planned, designed, administered and executed them as well. (SAC ¶40). Metropolitan scheduled and coordinated the exams of its employees. (SAC ¶38). The Metropolitan Defendants allegedly instructed its "employees that they were not to discuss the polygraph with any DEA employee" and to direct any questions regarding the polygraph only to Metropolitan. (SAC ¶48).

With respect to each Plaintiff, the SAC alleges as follows:

- <u>Plaintiff M.G.</u>  On July, 6, 2011, Defendant B.A. instructed M.G. that he was required to take a polygraph examination. No one provided M.G. any written materials regarding the examination. M.G.'s polygraph exam lasted four hours. After the examination, Metropolitan terminated his employment. (SAC ¶ 63).

- <u>Plaintiff F.M.</u>  On July 8, 2011, Defendant B.A. told F.M. he needed to come to work the next day to take a polygraph examination. The next day, July 9, 2011, F.M. was subjected to an approximately four hour polygraph exam. The polygrapher asked personal questions regarding F.M.'s past relationships and financial situation. The polygrapher told F.M. that he had neither passed nor failed the exam. F.M. was later escorted out of the building and his badge was taken away. Metropolitan

discharged F.M. from employment. (SAC ¶ 64).

• <u>Plaintiff L.A.</u>   Defendant B.A. told L.A. that she was to take a polygraph test on August 29, 2011. On August 10, 2011, however, B.A. told L.A. that she would have to take the exam the next day, August 11, 2011. No one provided L.A. any written material regarding the polygraph examination. During the pre-test phase of the examination, the polygrapher asked L.A. if she had engaged in sexual activity with animals. L.A.'s examination lasted approximately five hours and she was told that she did not pass the exam. L.A. was terminated from her employment with Metropolitan. (SAC ¶ 66).

• <u>Plaintiff J.M.</u>   On August 1, 2011, J.M.'s shift supervisor gave him a letter instructing him to submit to a polygraph test on August 22, 2011. No one provided J.M. with any other written documentation about the examination. The examination lasted approximately four hours and included a question regarding his sexual conduct and whether he cheated on his partner. The polygrapher told J.M. he failed one question and asked J.M. to submit to a retest. J.M. agreed. No one set up a retest and Metropolitan thereafter terminated J.M. (SAC ¶ 67).

• <u>Plaintiff L.G.</u>   Defendant B.A. told L.G. that she was required to take a polygraph test on September 13, 2011. On Tuesday August 30, 2011, Defendant B.A. arbitrarily changed the date to September 2, 2011, via text message. On September 2, 2011, L.G. submitted to a three hour polygraph examination. L.G. was informed she "failed" the test. She took the test again the next day for another three hours and again was told that she had "failed." Plaintiff L.G. worked at the ICE office which did not request or require a polygraph examination. In December of 2011, Metropolitan advised ICE of L.G.'s polygraph results. Metropolitan effectively discharged L.G. in December of 2011. (SAC ¶ 68).

•<u>Plaintiff F.B.</u>  On August 2, 2011, a Metropolitan shift supervisor gave F.B. a facsimile notifying him that he was scheduled for a polygraph on September 30, 2011.  No one provided any other documents related to the polygraph. On August 30, 2011, Defendant B.A. sent F.B. a text message informing him that his polygraph was rescheduled.  On September 9, 2011, Defendant B.A. sent F.B. a text message informing F.B. his new examination date was on September 14, 2011.  F.B. submitted to a polygraph test on that date.  The test lasted approximately four hours. He was asked personal questions, including whether he ever received treatment from a mental health practitioner.  The polygrapher told F.B. he "failed" the exam, and thereafter Metropolitan discharged him.  (SAC ¶ 69).

• <u>Plaintiff M.N.</u>  Defendant B.A. told M.N. via text message that she was to take a polygraph test on September 15, 2011.  M.N. provided a written statement to the DEA agent declining to take the polygraph test because the test violated the Employment Polygraph Protection Act ("EPPA").  Metropolitan fired her because she declined to take the test.  (SAC ¶ 72).

• <u>Plaintiff R.G.</u>  In the summer of 2011, Defendant B.A. told R.G. verbally that he would have to submit to a polygraph examination on a later date. R.G. grew concerned because he found out that employees who had been subjected to testing were called liars during the examinations.  On or about November 6, 2011, R.G. informed Defendant B.A. that he was not going to take the examination. R.G. worked at the ICE office at that time, which did not request or require Metropolitan employees to take a polygraph examination.  On December 21, 2011, while working at the ICE office, R.G. was informed that he was required to leave the site after he finished his shift.  Defendant L.L. notified R.G. that he was to return his identification card.  R.G. contacted Defendant B.A. regarding L.L.'s

instructions and B.A. expressed regret that R.G. would no longer be working at Metropolitan. (SAC ¶ 73).

• <u>Plaintiff L.S.</u> On September 9, 2011, Defendant B.A. informed L.S. via text message that his polygraph was scheduled on September 15, 2011. Defendant B.A. also gave additional instructions about what to eat and wear on the examination day. On September 12, 2011, a supervisor told L.S. that his exam would be rescheduled. On November 4, 2011, B.A. informed L.S. via text that his polygraph was scheduled for the upcoming Wednesday. B.A. also instructed him to eat before the exam. On November 8, 2011, B.A. sent L.S. a text message canceling the test. Later that day, B.A. called L.S. and told him to take the polygraph on November 22, 2011. On November 16, 2011, B.A. cancelled the polygraph via email. B.A. stated he would contact L.S. as soon as the polygrapher gave B.A. available dates. The next day, November 17, 2011, B.A. told L.S. that she would be taking the polygraph on November 22, 2011, after all. On November 22, 2011, B.A. sent a text to L.S. rescheduling the polygraph test for the next day. L.S. submitted to the polygraph examination the next day, November 23, 2011. An hour after finishing the exam, B.A. called L.S. and told her to give her badge to her supervisor and leave the building. (SAC ¶ 74).

• <u>Plaintiff E.R.</u> On March 12, 2012, Defendant B.A. told E.R. his polygraph had been scheduled on March 18, 2012, B.A. requested that E.R. go to the DEA office to submit to testing. E.R. had worked exclusively for ICE. (SAC ¶ 76).

On July 18, 2012, Judge Dana M. Sabraw granted in part and denied in part the motion to dismiss the First Amended Complaint filed by Defendants Metropolitan, J.C., L.L., R.P., M.L., and B.A. (Ct. Dkt. 20). Upon amendment, the Federal Defendants were joined as parties in the SAC. Shortly after this case was transferred to this court,

on January 28, 2013, the court ordered the substitution of the United States for the individual Federal Defendants pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FTCA"), Section 6, 28 U.S.C. §2678(d)(1).[1] (Ct. Dkt. 47).

On March 20, 2013, the court denied the Government's motion to dismiss the SAC based upon several sovereign immunity arguments and requested further briefing on whether EPPA affords Plaintiffs a private right of action against the Government.

## DISCUSSION

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly

---

[1] On February 25, 2013, Plaintiffs voluntarily dismissed their claims against Defendant L.L. (Ct. Dkt. 55).

submitted as part of the complaint. <u>Hal Roach Studios, Inc. v. Richard Feiner and Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. <u>Concha v. London</u>, 62 F.3d 1493, 1500 (9th Cir. 1995), <u>cert. dismissed</u>, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. <u>In Re Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).

**The EPPA Claims**

The parties dispute whether Plaintiffs, all employees of Metropolitan, may maintain a private right of action against the United States. EPPA provides certain employees with a limited private right of action against their employers. In pertinent part, EPPA provides:

> **(c) Private civil actions.** (1) Liability. An employer who violates this chapter shall be liable to the employee or prospective employee affected by such violation. Such employer shall be liable for such legal or equitable relief as may be appropriate, including, but not limited to, employment, reinstatement, promotion, and the payment of lost wages and benefits.
>
> (2) Court. An action to recover the liability prescribed in paragraph (1) may be maintained against the employer in any Federal or State court of competent jurisdiction by an employee or prospective employee for or on behalf of such employee, prospective employee, and other employees or prospective employees similarly situated. No such action may be commenced more than 3 years after the date of the alleged violation.
>
> (3) Costs. The court, in its discretion, may allow the prevailing party (other than the United States) reasonable costs, including attorney's fees.

29 U.S.C. §2005(c).

The term "'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. §2001(2). Plaintiffs allege that the United States is liable under this provision because

the Federal Defendants "participated in the violation by terminating security clearances of Plaintiffs; authorizing and requesting the polygraph testing; and coordinating the discharge of Plaintiffs from employment." (SAC ¶106).

Plaintiffs urge the court to apply the so-called "economic reality test" adopted by the Fifth and Tenth Circuits. Reasoning that the employer definition in EPPA is similar to that found in the Fair Labor Standards Act ("FLSA") and the Family and Medical Leave Act ("FMLA"), the Fifth Circuit applied the so-called "economic reality test."

> When examining the degree of control necessary to treat a polygraph examiner as an employer for purposes of the EPPA, district courts have considered whether the examiner (1) decided that a polygraph examination should be administered; (2) decided which employee would be examined; (3) provided expertise or advice to the employer regarding compliance with the EPPA's requirements, or the employer relied on the examiner to ensure compliance; or (4) decided whether the examined employee would be subjected to disciplinary action, or merely reported the results of the polygraph examination to the employer.

Calbillo v. Cavender Oldsmobile, Inc., 288 F.3d 721, 727 (5th Cir. 2002). These circuits reasoned that the meaning of "employer" under the "FLSA includes those who, as a matter of economic reality, exercise some degree of control over an employee's term and conditions of employment." Id. at 727.[2]

The court concludes that the economic realities test as applied to private parties in such cases as Calbillo, 288 F.3d 721, and Fernandez v. Mora-San Miguel Elec. Co-op., Inc., 462 F.3d 1244 (10th Cir. 2006), does not readily translate to circumstances where the Government may be acting in the public interest. In Calbillo, the employer, Cavender Oldsmobile, Inc., hired Allied Polygraph Services, Inc. ("Allied") to investigate the workplace theft of products from its parts department. An employee of Allied interviewed several employees and was involved in the decision to interview the plaintiff. However, there was insufficient evidence to show that Allied's employee was

---

[2] Even if the economics reality test were to apply under the circumstances, the court concludes that development of a factual record is a prerequisite to determining the applicability of the economics reality test.

involved in the decision to require the suspected wrongdoer employee to undergo a polygraph examination. The Fifth Circuit affirmed summary judgment in favor of Allied, and against the plaintiff-employee, on the EPPA claims. In Calbillo there was no governmental involvement.

In Fernandez, the employer suspected employee theft of an air compressor from its storage yard. The employer then contacted Lucero Professional Services ("LPS") and requested that it perform polygraph tests on some of its employees. LPS informed the employer that it would not test the employees but would do so if requested in conjunction with a criminal investigation. Shortly thereafter the New Mexico Fourth Judicial District Attorney's Office ("DAO") requested that LPS conduct the polygraph examinations. The employer set the schedule for the employee examinations and LSP conducted the polygraphs. However, LPS would not disclose the results to the employer, only the DAO. The DAO released the results to the employer and two employees were terminated. The Tenth Circuit affirmed the dismissal of the EPPA claims against LPS and the DAO.[3] In both these cases, the polygraph experts were retained to advance the private interests of the employer. In both Fernandez and Calbillo, the underlying question was whether the polygrapher qualified to be treated as an "employer" within the meaning of EPPA, a question not before this court.[4]

The FLSA authorities are also instructive on the application of the economic reality test. FLSA cases typically involve resolution of the degree of control exercised

---

[3] The claims against DAO were dismissed based upon state law sovereign immunity principles.

[4] The Government highlights that EPPA's definition of "employer" is different than that in the FLSA and the FMLA because the definition in these statutes specifically includes the Government whereas EPPA does not. For example, the FLSA provides:

> (d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee and includes a public agency (meaning the United States).

29 U.S.C. §203(d). The Government argues that the FLSA was amended to specifically include the definition of employer "includes a public agency." Thompson v. Sawyer, 678 F.2d 257, 263 (D.C. Cir. 1982). This amendment, the Government argues, demonstrates that public agencies should not be included as employer for purposes of EPPA.

by a purported employer over the employee. "To determine whether an individual or entity is an employer, the court considers whether the alleged employer: '(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records.'" Gray v. Powets, 673 F.3d 352, 355 (5th Cir. 2012) (quoting Williams v. Henagan, 595 F.3d 610, 615 (5th Cir.2010)). "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." Id. at 357. Under this view, whether the DEA exercised operational control over Plaintiffs' conditions of employment presents a question of fact.[5]

The statutory definition of "employer" extends to those "acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. §2001(2). Plaintiffs have properly pled sufficient facts giving rise to the plausible inference that the DEA was acting in the interests of Metropolitan by requiring the polygraphs in questions. Plaintiffs have also pled that the DEA was acting in concert with Metropolitan and involved with the policies and procedures for the administration of the polygraphs. At this early stage in the litigation process, the court denies the motion to dismiss, noting that the issues raised are better addressed in the context of an evidentiary motion or at trial.

Parenthetically, the court notes that the EPPA statutory scheme provides exemptions from EPPA for certain governmental agencies "in the performance of any counterintelligence function[s]" and for purposes of criminal investigation. 29 U.S.C. §§2006(b) - (c). To that end, the statute specifically permits the following agencies to require a contractor's employees, consultants, or experts to submit to polygraph examination: the Department of Defense, the Department of Energy, the National

---

[5] The court notes that 48 C.F.R. §37.104(c) may limit the Government's ability to exercise continuous supervision and control over a contracted employee.

Security Agency, the Defense Intelligence Agency, the National Imagery and Mapping Agency, the Central Intelligence Agency, the Federal Bureau of Investigation or any other department or agency whose duties involve access to top secret information classified at the level of top secret or designated as being with a special access program under Executive Order 12356, or successor orders. 29 U.S.C. §2006(b). While the DEA may engage in certain intelligence and counterintelligence activities with respect to international drug trafficking organizations, as well as criminal investigations, it is not specifically listed as an exempt public agency nor does the Government argue that the DEA's "duties involve access to information that has been classified at the level of top secret." 29 U.S.C. §2006(b)(2)(B).

In sum, the court denies the motion to dismiss the EPPA claims against the DEA.

**The Claims Against the Individual Federal Defendants**

The Government also moves for dismissal of the individual Federal Defendants pursuant to the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. §2671 et seq. (FTCA"). Under the FTCA, "a federal employee is immune from suit upon certification of the Attorney General that the employee was acting within the scope of his employment." Pauly v. U.S. Dep't of Agriculture, 348 F.3d 1143, 1150-51 (9th Cir. 2003); 28 U.S.C. § 2679(d)(1). There are two exceptions: where the allegations involve violations of the United States Constitution or violations of a federal statute that itself authorizes an action against the individual. Hamad v. Gates, 2011 WL 6130413, *8 (W.D. Wash. Dec. 8, 2011); 28 U.S.C. § 2679(b)(2). Upon certification by the Attorney General, the United States shall be substituted as the defendant and the government employee dismissed from the suit. Kashin v. Kent, 457 F.3d 1033, 1036-37 (9th Cir. 2006). "Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred." 28 U.S.C. § 2679(b)(1).

Here, the court grants the motion to dismiss the individual Federal Defendants

because the Government certifies that the individual federal defendants "were acting within the scope of their federal employment at the time of the incidents giving rise to this suit." (Ct. Dkt. 47 at p.1:25-28).

In sum, the court denies the motion to dismiss the EPPA claims and grants the motion to dismiss all claims against the Federal Defendants.

**IT IS SO ORDERED.**

DATED: August 8, 2013

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties