REBECCA L. TORREY (Bar No. CA 153866)
E-mail: rtorrey@manatt.com
YOANNA S. BINDER (Bar No. CA 218239)
E-mail: ybinder@manatt.com
MAURA F. KINGSEED (Bar No. CA 287430)
E-mail: mkingseed@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

BARRY W. LEE (Bar No. CA 088685)
E-mail: bwlee@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

*Attorneys for Defendants*
METROPOLITAN INTERPRETERS
AND TRANSLATORS, INC. AND J.C.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.G., *et al.*, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>METROPOLITAN INTERPRETERS AND TRANSLATORS, INC., a corporation, J.C., an individual, R.P., an individual, C.G., UNITED STATES OF AMERICA, SONDRA HESTER, an individual, DAREK KITLINSKI, an individual, WILLIAM R. SHERMAN, an individual, and DOES 1-20, inclusive,<br><br>Defendants. | Case No.  3:12-cv-00460-JM-MDD<br>         3:13-cv-01891-JM-MDD<br>         3:13-cv-01892-JM-MDD<br><br>Honorable Jeffrey T. Miller<br><br>**MEMORANDUM OF LAW REGARDING JOINT AND SEVERAL LIABILITY AND APPORTIONMENT** |

Case Nos. 12CV0460, 13CV1891, 13CV1892

## I. INTRODUCTION

Defendant Metropolitan Interpreters and Translators, Inc. ("Metropolitan") should not be held jointly and severally liable – and thus unable to seek apportionment – for harm Plaintiffs suffered as a result of the Drug Enforcement Administration's ("DEA") intentional violation of the Employee Polygraph Protection Act ("EPPA"). Traditional tort law principles concerning joint-and-several liability are inapplicable where the injury is divisible and the causation of each part can be separately assigned to each tortfeasor, or when, in the interest of justice, the contribution to an indivisible harm can be separated. *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979); *United States v. Burlington Northern & Santa Fe Railway Co.*, 502 F.3d 781, 797 (9th Cir. 2007) (citing Restatement (Second) of Torts § 433A(1) (1965)).

Here, to the extent Metropolitan's EPPA violations resulted in Plaintiffs' harm (they did not), such violations were not intentional and instead caused by mistake or ignorance of the law. Nor are Metropolitan's actions anywhere close to the level of the DEA's misdeeds, which included intentionally requiring and administering Plaintiffs' polygraph exams and revoking Plaintiff's security clearances. Put another way, while Metropolitan may have negligently violated the EPPA, the DEA intentionally did so. Thus, as set forth below, the DEA and Metropolitan should not be jointly and severally liable for any damages the jury may award for several reasons.

First, the wrongs committed by the DEA are separate from the conduct the Court attributed to Metropolitan in its ruling on Metropolitan's Motion for Summary Judgment; while Metropolitan misunderstood the law in good faith and did ministerial tasks as directed by and in accordance with its DEA contract, the DEA intentionally violated Plaintiffs' rights by polygraphing them in violation of the law. And courts have found that, where a negligent tortfeasor is held liable for

1  harm it and an intentional tortfeasor caused, it would be "absurd" to hold them
2  equally jointly and severally liable.
3       Second, Plaintiffs did not suffer "indivisible harm." Plaintiffs' harm – the
4  loss of their security clearances – was the result of the DEA's unlawful and
5  intentional act, i.e., revoking Plaintiffs' clearances after (1) Plaintiffs failed or
6  refused the polygraphs; and (2) DEA's claimed further reassessments.[1] To the
7  extent that Metropolitan caused Plaintiffs any harm by executing ministerial tasks at
8  DEA's direction, it had no control over the ultimate decision to revoke Plaintiffs'
9  security clearances, and such harm can be limited to any stress Plaintiffs suffered as
10 a result of the pre-polygraph communications and scheduling. Moreover, even if
11 Plaintiffs' harm is indivisible, there is a reasonable basis for determining the
12 contribution of both the DEA and Metropolitan *separately* in causing Plaintiffs'
13 harm and allow apportionment.
14      Further, while there is no authority determining whether joint and several
15 liability applies to EPPA, analogous cases – set forth below – have concluded that,
16 when an ***intentional*** tortfeasor and a ***negligent*** tortfeasor cause harm, it follows that
17 the doctrine is inapplicable, because a negligent tortfeasor should not be penalized
18 simply because the other tortfeasor acted intentionally.
19      Finally, all of the cases Plaintiffs cite to support their argument that
20 apportionment should be rejected in this case are inapposite.
21      Accordingly, the Court should not hold Metropolitan and the DEA jointly
22 and severally liable and allow an instruction to the jury to apportion non-economic
23 damages between Metropolitan and the DEA.
24 ///
25 ///

---

[1] Neither Metropolitan nor Plaintiffs know whether DEA actually reassessed the plaintiffs' security clearances. Rather, the evidence shows DEA said it would do so and months passed between the initial access suspension and the final determinations in January and February 2012.

## II. ARGUMENT

### A. Metropolitan and the DEA Should Not Be Held Jointly and Severally Liable.

Because Metropolitan did not intentionally violate the EPPA, it should not be held jointly and severally liable alongside the DEA, which intentionally violated the EPPA and caused Plaintiffs to lose their security clearances. "The propriety of imposing joint and several liability on defendants who act as part of a joint enterprise to commit an indivisible injury should be contrasted with situations where the evidence makes it possible to equitably apportion liability between or among negligent and strictly liable tortfeasors, or negligent and intentional actors. [Citations.]" *Kesmodel v. Rand*, 119 Cal. App. 4th 1128, n. 41 (2004). Indeed, "the 'comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss.'" *Knight v. Jewett,* 3 Cal. 4th 296, 313-14 (1992). As such, Section 433A of the Restatement allows for apportionment of damages where "(a) there are distinct harms, or (b) there is a ***reasonable basis for determining the contribution of each cause to a single harm***." Restatement (Second) of Torts § 433A(1) (1965) (emphasis added).

#### 1. Plaintiffs' Harm Is Divisible.

Plaintiffs' harm – the loss of their security clearances – is divisible. The evidence established that Plaintiffs' loss of their security clearance resulted in their inability to work on both DEA and Immigration, Customs and Enforcement ("ICE") projects. That harmed was caused, in whole, by the DEA. To the extent Metropolitan caused Plaintiffs any harm by scheduling the exams at DEA's direction or providing accurate information to Plaintiffs about the nature of the

EPPA and polygraphs, such harm is separate and apart from the loss of Plaintiffs' security clearance. As such, holding Metropolitan and the DEA jointly and severally liable is not appropriate.

For example, in *I-CA Enterprises, Inc. v. Palram Americas, Inc*., Cal. App. 4th 257 (2015), an importer brought a cause of action against a manufacturer and buyer of plastic strips for breach of contract among other claims; the manufacturer then cross-complained against the importer and its principals for breach of written contract and other claims. On appeal, plaintiff importer argued that, because the other two parties in the case had allegedly colluded to cause him lost profits (an indivisible harm), they should be held jointly and severally liable for the non-economic damages he suffered. *Id.* Denying that request, the court held, "each defendant was responsible for the portion of I–CA's total damages arising from its interference with the other defendant's contract." *Id.*

Similarly, in *Connor v. Grosso*, 41 Cal. 2d 229, 259 (1953), defendant dumped dirt on plaintiff's property and was only held liable for that portion, and not for dirt dumped by other tortfeasors. *Id*. at 232. And in *California Orange Co. v. Riverside Portland Cement Co*., 50 Cal. App. 522 (1920), two cement companies wrongfully operated their cement plants and dumped cement dust on the plaintiff's orange grove. Rejecting joint and several liability, the court found that the two cement companies were not joint tortfeasors, and held that the trial court was "at liberty to estimate, as best it could, from the evidence before it, how much of the total damage, caused by the operations of the two cement companies, was occasioned by defendant's plant." *Id.* Finally, in *Griffith v. Kerrigan*, 109 Cal. App. 2d 637, 639-40 (1952), seepage from the defendant's rice fields combined with seepage from nearby canals produced injury to the plaintiff's land and the court there held apportionment of damages to be appropriate.

Further, several cases involving the federal environmental statute, the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), have rejected an application of joint and several liability so as to avoid having a small actor not end up paying the bill for a much larger tortfeasor. *See Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) (holding that the defendant may avoid joint and several liability by establishing that it caused only a divisible portion of the harm if it, for example, contributed only a specific part of the hazardous substances that spilled); *United States v. Hercules, Inc.*, 247 F.3d 706, 716 (8th Cir. 2001) (noting that in CERCLA cases, "[m]any courts . . . have recognized the defense of divisibility of harm . . . .").

Similarly, here, Metropolitan should not be held jointly and severally liable for Plaintiffs' emotional distress, because that harm was caused by the DEA's revocation of their security clearance. To the extent that Metropolitan was a contributing factor, its fault is significantly less egregious than DEA's and it should be allowed to apportion such fault between the parties.

### 2.   The Wrong Committed by the DEA Should Be Separated from Metropolitan's EPPA Violation.

Even if the harm at issue in this case is indivisible, the wrongs committed – an intentional tort by the DEA versus Metropolitan's negligent violations of the EPPA – must be divided. Courts have upheld jury verdicts finding comparative fault as between negligent and intentional tortfeasors. *See Weidenfeller v. Star & Garter*, 1 Cal. App. 4th 1, 5 (1991) (finding "its absurdity" to require that several liability "has a limited effect benefitting a negligent tortfeasor only where there are other equally culpable defendants, but eliminating that benefit where the other tortfeasors act intentionally").

In *Weidenfeller*, the plaintiff was the victim of an assault in a bar parking lot and brought a personal injury action against the bar and its owners for failing to have adequate lighting and security in its parking lot. At trial, the jury allocated 75 percent of the fault to the assailant (the intentional tortfeasor), 20 percent to the bar

1  (the negligent tortfeasor), and five percent to the plaintiff.  On appeal, the Court

2  upheld a jury verdict finding comparative fault as between negligent and intentional

3  tortfeasors.  Specifically, the Court found that it would be "inconceivable" to allow

4  apportionment between two negligent tortfeasors, but bar apportionment (therefore

5  limiting its benefit to a negligent tortfeasor) when one of the tortfeasors acted

6  intentionally.  *Id.* at 5.  The Court reasoned that "[t]o penalize the negligent

7  tortfeasor in such circumstances . . . violates the commonsense notion that a more

8  culpable party should bear the financial burden caused by its intentional act."  *Id.*  It

9  is therefore in the interest of public policy to allow negligent tortfeasors to shift

10  responsibility to intentional tortfeasors "to prevent the unfairness of requiring a

11  tortfeasor who is only minimally culpable as compared to the other parties to bear

12  all the damages."  *Id.*

13       Likewise, here, it would be inequitable to apportion all of the burden of

14  Plaintiffs' potential non-economic damages to Metropolitan, when the evidence

15  during trial overwhelmingly established that Metropolitan did not intend to harm

16  Plaintiffs and had no involvement in the revocation of their security clearances.  In

17  contrast, the DEA requested, implemented, and took the Plaintiffs' polygraph

18  exams, during which Plaintiffs testified they suffered stress , "shame," and shock.[2]

19       As such, "[t]o penalize the negligent tortfeasor in such circumstances . . .

20  violates the commonsense notion that a more culpable party should bear the

21  financial burden caused by its intentional act."  *Id.*  It is therefore in the interest of

---

[2] For example, Plaintiff Gonzales testified that, immediately after the exam, he sat in his truck, feeling "hurt" and "ashamed."  (4/13/15 Tr., 1040:15-18.) Plaintiff Palomino testified that the polygrapher asked her if she "had sex with animals, he asked me if I had sex with children," making her very nervous during the exam, immediately after which she felt "sad and trapped" and was unable to " look at anybody like from Metro or any co-workers that I had on the eye."  (4/8/15 Tr., 525:8-12; 543:1-5.)  Plaintiff Bates testified that, immediately following the polygraph, he went to his car and "it was like I had been hit in the stomach, it was just everything was silent. I was incredibly exhausted from the exam itself. I was physically and mentally drained, and I'm walking to my car, and I really don't hear anything. I'm just in a bubble." (4/7/15 Tr., 297:8-14.)

public policy to allow negligent tortfeasors to shift responsibility to intentional tortfeasors "to prevent the unfairness of requiring a tortfeasor who is only minimally culpable as compared to the other parties to bear all the damages." *Id.* (emphasis in the original) Likewise, here, Metropolitan's actions were minimal in comparison to the actions of the DEA, which independently administered the polygraph exams and revoked Plaintiffs' security clearance.

### B. Plaintiffs' Cases Rejecting Apportionment and Supporting Joint and Several Liability Are Inapposite.

Plaintiffs' mostly rely on *Hazle v. Crofoot*, 727 F.3d 983, 993 (9th Cir. 2013) to argue that Metropolitan is not entitled to apportionment. That case is inapposite. There, plaintiff – an atheist – brought a claim against several state officials, including a parole officer and other state actors, seeking damages and injunctive relief for the deprivation of his First Amendment rights after they revoked his parole when he refused to participate in a religion-based residential drug treatment program. *Id*. During trial, the jury was advised that the court had found defendants liable for a 42 U.S.C. 1983 violation of plaintiff's First Amendment rights, which required that the court find proximate cause. After deliberations, the jury found that the defendants were not jointly and severally liable for either the emotional distress damages or the loss of liberty damages, and "award[ed] Hazle zero damages from every defendant as to both sets of damages (both emotional distress and loss of liberty)." *Id.* at 990. Overturning the jury's decision, the district court held,

> To the extent that the jury's verdict attempted to apportion all liability for Hazle's injuries to absent parties, it acted contrary to the district judge's order finding the state defendants liable. A finding of liability in a civil rights action—such as the one the district judge entered against the state defendants—requires, as a matter of law, that the defendant be the "proximate cause of the section 1983 injury." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir.1996). Thus, the district judge's finding of liability—which he left undisturbed and is not challenged on appeal—establishes as a matter of law that the state defendants in the trial caused Hazle's constitutional injury when they

incarcerated him for exercising his First Amendment rights. *Id.* at 994.

On the other hand, here, causation has not been established. Plaintiffs' attempt to fashion a causation finding from the Court's Motion for Summary Judgment ruling is not persuasive. As the Court recognized, its Motion for Summary Judgment ruling only established that Defendants violated EPPA—there has been absolutely no finding of causation. Therefore, Plaintiffs' reliance on *Hazel* is misplaced, as its exclusion of apportionment is entirely based on a finding of proximate causation.

Equally misplaced is Plaintiffs reliance on *Doherty v. Wireless Broadcasting Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1130-31 (9th Cir. 1998), for the proposition that no defendant held liable under a federal statute has a right to indemnification absent an affirmative creation of a right to contribution by Congress or under common law. *Doherty* has no application here. That case arises out of violations of the Cable Communications Policy Act, not the EPPA. Moreover, in *Doherty*, defendant filed a third-party complaint seeking indemnification from another party. *Id.* at 1130. Here, Defendants have filed no such third-party complaint, and they do not seen indemnification from the Government in this action. Unlike in *Doherty*, Defendants here only seek to apportion liability (there is none) between Defendants and the Government, assuming both parties caused Plaintiffs' purported damages (Defendants did not). Indemnification does not equate to apportionment; the case is inapposite.

Similarly, *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 97 (1981), does not help Plaintiffs. In fact, contrary to Plaintiffs' argument, "the omission [of an express grant of the right of contribution] is not dispositive." *United States v. Valentine*, 856 F. Supp. 627, 631 (D. Wyo. 1994) (declining to extend *Northwest Airlines*, 451 U.S. at 91). Where there is "little guidance, courts

may still infer a right to contribution where doing so would be consistent with express contribution rights granted under analogous laws and would not frustrate the purpose of the statute in question." *Id.* And as set forth above, EPPA does not prohibit contribution on its face, and equitable principles and analogous case law support a finding that joint and several liability is not appropriate here and apportionment should be allowed.

### III.   CONCLUSION

In sum, Plaintiffs cite no authority – none exists – holding that apportionment is unavailable under the EPPA. Plaintiffs' argument fails and Metropolitan should not be held jointly and severally liable with the DEA.

Dated:  April 15, 2015

MANATT, PHELPS & PHILLIPS, LLP

By:  s/ Barry W. Lee

*Attorneys for Defendants*
METROPOLITAN INTERPRETERS AND TRANSLATORS, INC., and J.C.

# PROOF OF SERVICE

I, Barry W. Lee, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11355 West Olympic Boulevard, Los Angeles, California 90064-1614. On **April 15, 2015,** I served a copy of the within document(s):

**MEMORANDUM OF LAW REGARDING JOINT AND SEVERAL LIABILITY AND APPORTIONMENT**

☒ (By ELECTRONIC FILING) I served each of the above referenced document(s) by E-filing in accordance with the rules governing the electronic filing of documents in the United States District Court for the Southern District of California, which will send notification of such filing to the following interested parties

| | |
|---|---|
| Eugene G. Iredale, egiredale@yahoo.com Grace Jun, gjun@iredalelaw.com Iredale & Yoo, APC 105 West F Street, 4th Floor San Diego, CA  91201-6036 Tel:  (619) 233-1525; Fax:  (619) 233-3221 | *Attorneys for Plaintiffs M.G., F.M., L.A., J.M., L.G., F.B., M.N. and R.G.* |

I declare that I am a member of the bar of this court at whose direction the service was made. Executed on **April 15, 2015** at Los Angeles, California.

                                                                s/ Barry W. Lee