1

2

3

4

5

6

7

8        **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10  FERNANDO MEDINA, et al.,              CASE NO. 12cv0460 JM(MDD)
                                                       13cv1891 JM(MDD)
11                        Plaintiffs,                   13cv1892 JM(MDD)

12       v.                              ORDER DENYING MOTION FOR
                                          JUDGMENT AS A MATTER OF
13                                        LAW; DENYING MOTION FOR
                                          NEW TRIAL; AWARDING
14  METROPOLITAN INTERPRETERS            ATTORNEYS' FEES AND COSTS;
    AND TRANSLATORS, INC.,                and DENYING EX PARTE
15                                        APPLICATION TO STAY
                                          EXECUTION OF JUDGMENT
16                        Defendant.

17

18       Defendant Metropolitan Interpreters and Translators, Inc. ("Metropolitan")

19  moves for judgment as a matter of law pursuant to Fed.R.Civ.P. 50, for a new trial

20  pursuant to Fed.R.Civ.P. 59, and to stay execution of the judgment. Plaintiffs Fernando

21  Medina, Eduardo Ruvalcaba, Richard Gonzalez, Francisco Bates, Maria Nielsen,

22  Melany Duran, Lilia Palomino, Elizabeth Sanchez, and Maribel Taylor (collectively

23  "Plaintiffs") oppose both motions and separately move for an award of attorneys' fees

24  and costs.  Metropolitan opposes Plaintiffs' motion.  Pursuant to Local Rule 7.1(d)(1),

25  the court finds the matters presented appropriate for resolution without oral argument.

26  For the reasons set forth below, the court denies the Rule 50 motion for judgment as

27  a matter of law, denies the Rule 59 motion for new trial, awards Plaintiffs attorneys'

28  fees and costs in the amount of $916,998.37 and $21,824.15, respectively, and denies

the <u>ex parte</u> application to stay execution of the judgment as moot.

1                                  **BACKGROUND**

2         Following trial by jury, on June 30, 2015, judgment was entered against

3 Metropolitan and in favor of the Plaintiffs in the total amount of $2,632,000.[1] (Ct. Dkt.

4 315).  The court incorporates by reference the court docket, including this court's

5 October 24, 2014 Order Grant in Part and Denying in Part Motions for Summary

6 Judgment ("Order," Ct. Dkt. 161), and the trial record.

7                                  **DISCUSSION**

8 **The Rule 50 Motion**

9         Pursuant to Fed.R.Civ.P. 50(b), Metropolitan renews its motion for judgment as

10 a matter of law.  Judgment notwithstanding the verdict is proper if the evidence,

11 construed in the light most favorable to the nonmoving party, permits only one

12 reasonable conclusion, and that conclusion is contrary to the jury's verdict.  See

13 Gilbrook v. City of Westminister, 177 F.3d 839, 864 (9th Cir. 1999).  The district court

14 must uphold the jury's award if there was any "legally sufficient basis" to support it.

15 Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir.2002). In making that

16 determination, the district court considers all of the evidence in the record, drawing all

17 reasonable inferences in favor of the nonmoving party. Experience Hendriz L.L.C. v.

18 Hendrixlicensing.com Ltd., 762 F.3d 829, 842 (9th Cir. 2014).  In ruling on the

19 motion, the court may not make any credibility determinations or reweigh the evidence.

20 Id.

21         Metropolitan contends that no reasonable juror could find that (1) Metropolitan

22 caused Plaintiffs any damage and (2) Metropolitan's conduct permitted the

23 consideration of punitive damages.  In light of the extensive evidentiary record

24 supporting the jury's findings, these arguments are easily discounted.  The jury's

25 determination that Metropolitan facilitated and was a substantial factor in jointly

26 causing Plaintiffs harm is supported by substantial evidence and provides an adequate

27

28         [1] This amount reflects the jury verdict after apportionment. The jury returned a total verdict of $4,032,000.

legal basis for the imposition of liability.  As noted in this court's Order:

> Metropolitan, through its employees, facilitated the implementation of the DEA's polygraph examination plan.  Metropolitan, who employed about 100 linguists in 2011, notified Plaintiffs of the required polygraph examinations in writing, scheduled the polygraph examinations, and advised the employees of the adverse consequences of not taking the polygraph examinations.  Plaintiffs received letters and memos from Metropolitan purporting to explain that the polygraph examinations were legal and that monitors/linguists were required to submit for examination.  Once an employee refused to take the polygraph examination or failed the test, the employee was not permitted to continue to work on DEA projects and was terminated.  Metropolitan also disclosed the DEA polygraph examination results of its linguists to ICE officials.  ICE then terminated access to ICE projects for those employees who failed or refused to take the polygraph examination.

(Ct. Dkt. 160 at p.5).  The trial record is replete with evidence that Metropolitan was Plaintiffs' employer, required Plaintiffs to submit to the polygraphs, rejected claims by its employees that the polygraphs violated the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. §§2002(1)(2), and (3) EPPA, misinformed its employees about the polygraphs, scheduled the polygraphs, used the polygraph results to discharge its employees who failed or refused to take the exam, acted jointly and in concert with the DEA in effectuating the polygraphs, and shared the polygraph results with ICE, leading to additional employee firings.[2]  Moreover, the Plaintiffs provided substantial evidence of the emotional distress caused by Metropolitan's wrongful discharge of Plaintiffs.  In light of the substantial evidence submitted in support of Plaintiffs' claims, the Rule 50 motion fails.

Metropolitan's arguments concerning punitive damages are moot.  While the jury determined that Metropolitan did in fact act in reckless disregard of Plaintiffs' rights, the jury ultimately determined not to assess punitive damages.  Simply stated, the jury apparently concluded that the degree of reprehensibility associated with Metropolitan's conduct did not justify damages to punish that conduct.  As such, Plaintiffs failed to carry their burden to establish punitive damages.  Metropolitan simply fails to cite any

---

[2] In several instances, Metropolitan deprived employees of the opportunity to continue working on DEA cases due to revoked security clearances following a failed or refused exam.

1   authority that the denial of a punitive damages award by the jury presents a live

2   controversy.  Furthermore, even if not moot, as set forth by Plaintiffs, the evidentiary

3   record demonstrated that "Metropolitan's conduct reflected [a] complete [and reckless]

4   indifference to Plaintiffs' [EPPA] rights."  (Oppo. at pp.9 - 10).

5         In sum, the court denies the motion for new trial.

6   **The Rule 59 Motion**

7         Pursuant to Rule 59, the court may "grant a new trial on all or some of the issues

8   . . . after a jury trial, for any reason for which a new trial has heretofore been granted

9   in an action at law in federal court. . . ."  Fed.R.Civ.P. 59(a)(1).  "Ultimately, the

10  district court can grant a new trial under Rule 59 on any ground necessary to prevent

11  a miscarriage of justice."  Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.,

12  762 F.3d 829, 842 (9th Cir. 2014).  A rule 59 motion will only be granted if the verdict

13  "[i]s against the great weight of the evidence, or it is quite clear that the jury has

14  reached a seriously erroneous result."  EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th

15  Cir. 1997).  "Doubts about the correctness of the verdict are not sufficient grounds for

16  a new trial: the trial court must have a firm conviction that the jury has made a

17  mistake."  Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th

18  Cir. 1987).  "A jury verdict should be set aside only when the evidence permits only

19  one reasonable conclusion, and that conclusion is contrary to the jury's verdict." DSPT

20  Int'l, Inc. v. Nahum, 624 F.3d 1213, 1218 (9th Cir.2010) (internal quotations and

21  citations omitted).

22        Metropolitan moves for a new trial on six separate grounds: (1) the emotional

23  distress damages were excessive; (2) Plaintiff's counsel engaged in prejudicial

24  misconduct by referring to Metropolitan's financial condition; (3) the court refused to

25  instruct on Metropolitan's affirmative defenses; (4) this court's summary judgment

26  Order/instruction was erroneous; (5) the jury's damages findings were against the

27  weight of evidence; and (6) Metropolitan was prejudiced by irrelevant evidence.  Each

28  is discussed in turn.

Excessive Emotional Distress Damages

Metropolitan contends that Plaintiffs, based upon their own representations, were limited to "garden variety" emotional distress damages. Metropolitan represents that garden variety emotional distress damages are in the range of about $5,000 - $30,000, and not the $200,000 - $500,000 awarded by the jury. This argument is not persuasive for several reasons. First, contrary to Metropolitan's contentions, the term "garden variety" is not a term of art with a specialized legal meaning. "Garden variety" simply means "not unusual: ordinary or common." Merrian Webster http://www.merriam-webster.com/dictionary/garden-variety (last visited October 1, 2015). Jury Instruction No. 20, Measure of Types of Damages, sets forth the scope of emotional distress damages:

> "In determining the measure of damages, you should consider past and future: (2) emotional distress such as any inconvenience, grief, anxiety, humiliation, worry, or shame, and which with reasonable probability will be experienced in the future."

Metropolitan does not dispute that the jury was properly instructed on the measure of emotional distress damages nor does it show that the emotional distress damages actually awarded fall outside the scope of Jury Instruction No. 20.

Second, Metropolitan's argument that the amount of emotional distress damages is excessive ignores the evidence of significant, extensive emotional suffering by Plaintiffs, as reflected in evidentiary record, and fails to recognize that Metropolitan engaged in egregious conduct which violated federal law. Moreover, Metropolitan fails to cite any evidence suggesting that any Plaintiff suffered such severe emotional distress to require intensive psychiatric treatment or hospitalization such that an expert on mental health issues would be required for the jury to understand the nature of the emotional distress suffered by Plaintiffs. See FRE 702. The emotional distress damages, as discussed below, are ordinary, commonplace, and thoughtfully and reasonably determined by the jury.

The emotional distress suffered by Plaintiffs fully supports the jury's verdict. Plaintiffs' were wrongfully required to subject themselves to an illegal polygraph,

1  certain Plaintiffs (correctly) informed Metropolitan that the polygraphs violated EPPA,

2  Metropolitan provided erroneous information concerning the polygraphs, and

3  Metropolitan required its employees to take the polygraphs.  Metropolitan then

4  discharged the employees who refused to take the exam or failed the exam or imposed

5  other significant adverse employment consequences.  From this conduct, Plaintiffs lost

6  their unique and purposeful employment, in which they performed important services

7  for the United States government, and suffered serious diminished quality of life.

8  Plaintiffs provided testimony about the severe emotional distress including, the stress

9  arising from the loss of income, the ability to provide for their families, and loss of

10  meaningful and satisfying work.  Furthermore, the evidentiary record demonstrates that

11  Plaintiffs were humiliated because, as discharged employees who failed a polygraph

12  exam, they could be seen by members of the community as having engaged in criminal

13  conduct and shunned by society and prospective employers because of those

14  perceptions.  The emotional distress suffered by Plaintiffs is significant and the jury's

15  verdict is amply supported by the evidentiary record.

16          The court rejects Metropolitan's argument that the emotional distress damages

17  are excessive.

18                    Reference to Metropolitan's Financial Condition

19          Metropolitan contends that Plaintiffs' reference to Metropolitan's financial

20  condition during the liability phase of the trial so prejudiced Metropolitan that a new

21  trial is warranted.  This argument is not persuasive.  During the cross examination of

22  Mr. Citrano, Plaintiffs' counsel asked about Metropolitan's business dealings with the

23  DEA and asked about a multi-year contract for hundreds of millions dollars.  At this

24  point, the court sua sponte stopped the questioning and instructed the jury to disregard

25  any references to specific dollar amounts.  Plaintiffs' counsel also made reference to

26  the contract between Metropolitan and DEA as "very large" and "huge."  Metropolitan

27  concludes its argument by noting that the non-economic damages were so large that

28  only improper prejudice can explain the amount of the non-economic damages award.

1          The court rejects Metropolitan's arguments.  The court struck the monetary

2    references in the question and answer and promptly provided two firmly worded

3    limiting instructions, instructing the jury not to consider the financial evidence in

4    determining liability. "The law presumes that the jury carefully follows the instructions

5    given to it." Jadwin v. County of Kern, 767 F.Supp. 2d 1069, 1084 (E.D. Cal. 2011).

6    Accordingly, any potential prejudice suffered by Metropolitan was cured by the court's

7    timely action, including its limiting instructions.

8          In sum, the court rejects Metropolitan's argument that the brief reference to its

9    financial condition caused severe prejudice.

10         The Affirmative Defense Instructions

11         Metropolitan contends that the court erred in not providing jury instructions

12   concerning the affirmative defenses of contractual assumption of the risk, consent,

13   superseding cause, unclean hands, and waiver.  As a threshold mater, the court denies

14   this ground for a new trial because Metropolitan, who has the burden to show that the

15   evidentiary record supports the elements of the affirmative defenses, does not cite any

16   evidence supporting the applicability of any of these affirmative defenses.  See United

17   States v. Sparks, 791 F.3d 1188 (10th Cir. 2014 ("To qualify for an affirmative defense

18   jury instruction, a defendant must point to evidence supporting each element of the

19   affirmative defense."); United States v. Figueroa-Lugo, 793 F.3d 179 (1st Cir. 2015)

20   Here, without reference to the evidentiary record, the court is unable to assess whether

21   the evidence would support any element of an affirmative defense.  Moreover, the court

22   incorporates its reasoning and rulings during jury instruction conferences when those

23   matters were addressed.

24         In sum, the court rejects Metropolitan's argument that the jury should have been

25   instructed on the affirmative defenses of contractual assumption of the risk, consent,

26   superseding cause, unclean hands, and waiver.

27         The Summary Judgment Order

28         Metropolitan contends that the Order was erroneous because "the evidence

1  showed that Metropolitan's conduct did not constitute any of the statutory violations

2  set forth in EPPA. . . . [and Metropolitan did] not take adverse employment actions

3  against Plaintiff." (Motion at p.17:9-13).  Metropolitan also repeatedly argues that the

4  "DEA revoked Plaintiffs' security access, which meant that they could not work in the

5  DEA facility." (Motion at p.17 13-14).   This argument misconstrues the evidentiary

6  record and minimizes Metropolitan's wrongful conduct.  As noted in the Order,

7          The court grants summary judgment in favor of Plaintiffs and against
        Metropolitan on whether Metropolitan violated 29 U.S.C. §§2002(1)(2)
8          and (3).  Plaintiffs come forward with overwhelming evidence to show (1)
        Metropolitan is the Plaintiffs' employer and (2) Metropolitan required
9          Plaintiffs to submit to or take a polygraph examination, it inquired into the
        results of the polygraph examinations, and Metropolitan discharged
10         employees who failed or refused to take the polygraph examination.  See
        i.e. Exh. 24, Metro 2101-02.   Such conduct violates 29 U.S.C.
11         §§2002(1)(2) and (3).   Moreover, Metropolitan does not submit any
        evidence to rebut or challenge the evidence submitted by Plaintiffs that it,
12         in fact, was Plaintiffs' employer or that it required, inquired into, or
        discharged Plaintiffs who failed or refused to submit to polygraph
13         examination.

14  (Order at p.9:9-19).  Metropolitan's wrongful conduct in subjecting its employees to

15  polygraph examination in violation of EPPA provides a private right of action by

16  creating a cause of action for an employee against "an employer who violates [the

17  EPPA] . . . for such legal or equitable relief as may be appropriate."  29 U.S.C. §

18  2005(c)(1).   Contrary to Metropolitan's contentions, the evidentiary trial record

19  overwhelming supports, rather than undermines, the grant of summary adjudication on

20  the issue of whether Metropolitan violated EPPA.

21          In sum, the court rejects Metropolitan's argument that the Order was

22  improvidently granted.

23          Excessive Damages Award

24          Metropolitan contends that the damages awarded to Plaintiffs are excessive

25  because "the evidence demonstrated that the damages were caused by the conduct of

26  the DEA, not Metropolitan." (Motion at p.18:5-6).  As set forth above, this skewed

27  view of the evidentiary record minimizes Metropolitan's significant wrongful conduct

28  in subjecting its employees to polygraph examination and ignores its role in the

1  examinations.   While Metropolitan views its conduct as mere "technical EPPA

2  violation[s]," the evidentiary record refutes these contentions.  These arguments do not

3  directly challenge the amount of damages awarded.  Rather, Metropolitan argues that

4  it is an innocent party and continues to lay blame at the foot of the DEA for the

5  discharge of Plaintiffs.  The court rejects these contentions.

6       Here, Metropolitan was under a duty imposed by EPPA to <u>not</u> polygraph its

7  employees.  <u>See</u>  29 U.S.C. §§2002(1)(2) and (3).  Causation and the amount of

8  emotional distress injuries and damages is a question of fact determined by the jury

9  based upon the admissible evidence presented at trial.  Here, based upon applicable

10  legal authorities and the evidentiary record, the damages awarded are not excessive and

11  merely compensate Plaintiffs for the harm caused by Metropolitan.

12       In sum, the court rejects Metropolitan's argument that the damages awarded are

13  excessive.

14       <u>Irrelevant Evidence</u>

15       Metropolitan contends that it was prejudiced by irrelevant evidence related to

16  Plaintiffs' fraud cause of action which was later dismissed by Plaintiffs.

17  Metropolitan's failure to cite any prejudicial and irrelevant evidence is fatal to this

18  argument.  Metropolitan fails to show that the unidentified evidenced (1) did not have

19  some relevance to the EPPA or state law claims or (2) caused Metropolitan any unfair

20  prejudice.  Under these circumstances, the court rejects Metropolitan's argument that

21  it suffered undue prejudice by irrelevant evidence.

22       In conclusion, the court denies the motion for new trial.

23  **Attorneys' Fees**

24       Plaintiffs request an award of attorneys' fees in the amount of $1,222,664.50 and

25  litigation expenses of $21,824.15.  The parties do not dispute that the court may award

26  the prevailing party "reasonable costs, including attorneys' fees."   28 U.S.C.

27  §2005(c)(3).   The amount of the prevailing party's reasonable attorney fees is

28  determined by using the lodestar method.  <u>See</u> <u>Camacho v. Bridgeport Fin., Inc.</u>, 523

1    F.3d 973, 978 (9th Cir. 2008).  The lodestar is calculated by multiplying the number

2    of hours reasonably expended by a reasonable hourly rate.  See Camacho v. Bridgeport

3    Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

4         "Although in most cases, the lodestar figure is presumptively a reasonable

5    fee award, the district court may, if circumstances warrant, adjust the lodestar to

6    account for other factors which are not subsumed within it."  Ferland v. Conrad Credit

7    Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  These factors include (1) the time

8    and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill

9    requisite to perform the legal service properly; (4) the preclusion of other employment

10    by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee

11    is fixed or contingent; (7) time limitations imposed by the client or the circumstances;

12    (8) the amount involved and the results obtained; (9) the experience, reputation, and

13    ability of the attorneys; (10) the undesirability of the case; (11) the nature and length

14    of the professional relationship with the client; and (12) awards in similar cases.  See

15    Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

16         In this case, Plaintiffs seek to be compensated for attorneys' fees consisting of

17    fees for Eugene Iredale (846.3 hours at $850 per hour), Julia Yoo (523.7 hours at $625

18    per hour), and Grace Jun (596.6 hours at $295 per hour) for a total of $1,222,664.50,

19    in addition to expenses of $21,824.15.

20         The Hourly Rates

21         The fee applicant bears the burden of producing evidence that the requested rates

22    are "in line with those prevailing in the community for similar services by lawyers of

23    reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S.

24    886, 895 n.11 (1984).  The relevant community is the forum in which the district court

25    sits.  See Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  Comparable cases are

26    those of "similar complexity."  Davis v. City & Cnty. of San Francisco, 976 F.2d 1536,

27    1545 (9th Cir. 1992), vacated in part on other grounds on denial of reh'g, 984 F.2d 345

28    (9th Cir. 1993).

1       Here, Iredale, Yoo, and Jun seek to be compensated at the hourly rates of $850,

2   $625, and $295 per hour, respectively.  The court finds these hourly rates reasonable

3   under the circumstances.    Plaintiffs' attorneys include their own declarations

4   substantiating their education and experience, as well as four declarations from

5   attorneys in the community with similar skills, experiences, and reputations.  These

6   declarations, as well as the declaration of Carol Sobel, and the authorities cited by

7   Plaintiffs, establish that the requested rates are in line with the fees of similarly situated

8   attorneys.  Moreover, Metropolitan does not oppose the hourly rates of counsel.

9       In sum, the court finds the proposed hourly rates reasonable under the

10  circumstances.

11      Hours Reasonably Expended

12      "The fee applicant bears the burden of documenting the appropriate hours

13  expended in the litigation and must submit evidence in support of those hours worked."

14  Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  The opposing party then

15  has the burden of submitting evidence that challenges the accuracy or reasonableness

16  of the hours charged or the facts asserted by the prevailing party in its affidavits.  Id. at

17  1397–98.

18      "By and large, the court should defer to the winning lawyer's professional

19  judgment as to how much time he was required to spend on the case; after all, he won,

20  and might not have, had he been more of a slacker."  Moreno v. City of Sacramento,

21  534 F.3d 1106, 1112 (9th Cir. 2008).  However, courts may reduce the allowable hours

22  if they are inadequately documented, duplicative, excessive, or otherwise unnecessary.

23  See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986), amended

24  on other grounds, 808 F.2d 1373 (9th Cir. 1987).

25      In large part, Metropolitan does not challenge the total amount of time spent by

26  Plaintiffs' counsel in prosecuting this action.  Metropolitan does assert that Plaintiffs

27  engaged in "block-billed time entries."   Block billing is described as a time-keeping

28  method in which an attorney enters the time working on a case rather than specifically

1  itemizing the time spend on specific tasks.  See Welch v. Met. Life Ins. Co.,m 480 F.3d

2  942, 945 n.2 (9th Cir. 2007).  The court notes that Plaintiffs' counsel have submitted

3  approximately  51 pages of detailed billing records identifying the activity performed

4  by counsel and the time spent on that activity.  The only challenged so-called "block

5  entry" identified by Metropolitan is an entry on February 28 , 2015 for 5.5 hours.  The

6  description states: "Trial preparation meeting with Richard, Maria and Francisco." (Ct.

7  Dkt. P.28).  The court concludes that this is not a "block entry" because it identifies

8  that counsel met with three of the Plaintiffs to discuss trial related matters.  This entry,

9  in combination with counsel's other detailed entries, is sufficient to substantiate

10  counsel's time and the work performed on this activity.

11      In sum, the court finds that the requested hours were reasonably expended.

12      Adjustments

13      Metropolitan seeks a downward adjustment of 90% to the lodestar amount based

14  upon its perception of the limited success obtained by Plaintiffs' counsel. Metropolitan

15  contends that Plaintiffs prevailed on only one of ten claims (the EPPA claim) against

16  only one of eight defendants thereby warranting a 90% reduction in the requested fees.

17  This argument is not persuasive.

18      There is a strong presumption that the lodestar figure represents a reasonable fee.

19  D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1384 (9th Cir. 1990).  In

20  determining the reasonableness of any fee award, the court considers all relevant

21  circumstances, including the 12 factors identified in Kerr.  Applying the Kerr factors,

22  the court concludes that a 25% reduction in the fee request is appropriate in light of the

23  degree of success of the overall litigation.

24      As noted in Hensley v. Eckerhart, 461 U.S. 424, 429 (1983), the court may adjust

25  the lodestar amount based upon several factors, including the degree of success

26  achieved by the prevailing party.  Applying the factors identified in Hensley and Kerr,

27  the court reduces the lodestar amount by 25%.  The court notes that the distribution of

28  labor, as reflected in the time records, does not demonstrate the most efficient use of

1  the time of Iredale, Yoo, and Jun.  For example, many of the tasks performed by Mr.

2  Iredale at $850 per hour could be reasonably performed at a lower partner or associate

3  hourly rate, particularly with respect to the amount of client communication time,

4  drafting the complaints, responses to motions to dismiss, responses to the summary

5  judgment, and discovery related matters. (Plaintiffs Exh. 12).  The court notes that the

6  arguments and issues raised in these documents are not particularly complex from

7  either a factual or legal perspective such that the extensive use of a senior partner is

8  warranted under the circumstances.

9      Another factor warranting an adjustment is the degree of success achieved by

10  counsel.  The original complaint alleged ten causes of action against six defendants.

11  (Ct. Dkt. 1).  The second amended complaint alleged nine cause of action against the

12  same six defendants, and five DEA related defendants.  Plaintiffs alleged three EPPA

13  claims and six state law claims for civil conspiracy, fraud, negligent misrepresentation,

14  intentional infliction of emotional distress, negligence, and declaratory relief.   In

15  addition, Plaintiffs sought an award of punitive damages.  The court notes that

16  Plaintiffs spent substantial time litigating claims against parties who were ultimately

17  dismissed from the action.

18      In the October 24, 2014 Order, (Ct. Dkt. 161), entered about six months prior to

19  trial, Plaintiffs established that Metropolitan violated EPPA.  Following the entry of

20  summary judgment against Metropolitan on this portion of Plaintiffs' EPPA claims,

21  Plaintiffs continued to conduct discovery and prepare for trial.  At trial, Plaintiffs

22  submitted evidence in support of their state law claims.  While some evidentiary

23  overlap exists, the court notes that much of the time spent in the pursuit of the state law

24  claims never bore fruit because, after the parties expended substantial time and

25  resources pursuing state laws claims both at trial and pre-trial, Plaintiffs dismissed all

26  state law claims and all individual defendants prior to jury deliberation.

27      Finally, an adjustment to the lodestar is appropriate because Plaintiffs did not

28  prevail on their claim for an award for punitive damages even though substantial

1  discovery and trial time was dedicated to the pursuit of punitive damages.  Further, the

2  court notes that the reduced lodestar amount is consistent with a one third contingency

3  attorneys' fee  award.[3]

4        In sum, the court awards Plaintiffs' counsel $916,998.37 ($1,222,664.50 times

5  .75) in attorneys' fees and costs of $21,824.15.[4]

6  **Motion to Stay Execution of Judgment**

7        Metropolitan moves <u>ex parte</u> to stay execution of the judgment pending

8  resolution of the post-trial motions and through appeal.  The court denies the motion

9  to stay as moot in light of the present order.  With respect to a stay of execution

10 pending appeal, the motion is denied until Metropolitan posts an appropriate

11 supersedeas bond.  <u>See</u> Fed.R.Civ.P. 62(d).

12                          **CONCLUSION**

13       In conclusion, the court denies the Rule 50 motion for judgment notwithstanding

14 the verdict, denies the Rule 59 motion for new trial, awards attorneys' fees and costs

15 in the amount of $916,998.37 and $21,824.15, respectively, and denies the <u>ex parte</u>

16 application to stay execution of the judgment.

17       **IT IS SO ORDERED.**

18 DATED:  October 13, 2015

19                                              _____
                                               Hon. Jeffrey T. Miller
20                                             United States District Judge

21 cc:         All parties

22

23

24       [3] In relation to the DEA settlement, Plaintiffs represented that one third of the
   settlement would be distributed to counsel pursuant to the client fee agreement.  A one
25 third attorneys' fee award on the present record would amount to $877,333 ($2,632,000
   times one third).
26

27       [4] The court finds that the costs requested are reasonable and of the type that are
   typically billed to fee paying clients.  While Metropolitan argues that Plaintiffs fail to
   show that certain Office Depot and Office Max expenses were incurred in this
28 litigation, the court accepts counsels' declarations as officers of the court that the
   expenses were incurred in this litigation.